COMPTROLLER OF THE TREASURY *v.* CITIZENS
FOR HOYER

[No. 788, September Term, 1981.]

*Decided February 8, 1982.*

The cause was argued before MOYLAN and LOWE, JJ., and
CHARLES E. ORTH, JR., Associate Judge of the Court of
Appeals (retired), specially assigned.

*Gerald Langbaum, Assistant Attorney General,* with
whom was *Stephen H. Sachs, Attorney General,* on the brief,
for appellant.

*Douglas M. Bregman* for appellee.

ORTH, J., delivered the opinion of the Court.

The issue in this appeal is whether a "performance" was furnished at a "COCKTAIL RECEPTION IN HONOR OF STENY H. HOYER for Governor." Riding on the determination of the issue is $4,270. If a performance was furnished, that sum shall be retained by the Comptroller of the Treasury of Maryland who collected it in satisfaction of admission and amusement taxes claimed to be due. If a performance was not furnished, the coffers of the Citizens for Hoyer, a political committee which staged the reception, will be enriched by the refund of the taxes plus interest.

The authority under which the taxes were collected is § 402 (a) of Article 81 of the Maryland Code (1957, 1975 Repl. Vol.). In pertinent part the statute provides that any county by resolution may levy a tax on the gross receipts of every person, firm, or corporation obtained from sources within the county derived from the amounts charged for "admission to any place . . . including a cover charge for seats or tables at any roof garden, cabaret or other similar place where there is furnished a performance, if payment of the amounts entitles the patron thereof to be present during any portion of the performance," and for "refreshment, service or merchandise at any roof garden, cabaret or similar place where there is furnished a performance." The term "roof garden or other similar place" is defined by the section to

> "include any room in any hotel, restaurant, hall or other place where music or dancing privileges or other entertainment, except mechanical music, radio or television, alone, and where no dancing is permitted, are afforded the members, guests, or patrons in connection with the serving or selling of food, refreshment or merchandise."

Baltimore County implemented the statute by the passage of Bill No. 42-72, Resolution No. 2 (10 May 1972), and the tax so levied was in effect at the time of the Hoyer event.

The Hoyer reception was held on 21 February 1978 at Martin's West in Baltimore County as a political fund raiser. Gross receipts of $85,400 were realized from the sale of tickets at a cost of $100 for a ticket, which admitted one person. The net proceeds were intended to be applied to a political campaign for Hoyer. The function began at 5:30 p.m. and continued until about 9 p.m. A "full buffet" was served.

Whether a "performance" was furnished within the contemplation of the statute centers on a band of seven musicians (accordion, trumpet, saxophone, trombone, guitar, drums, and bass) located on a platform in view and hearing of those present. The band played fifteen to twenty pieces of Dixieland music for about one and a half hours in half hour intervals, for which it was paid $320, an amount stated to be low as a favor to Hoyer. There was no dancing; the music was not "dance music" but "rally music," typified by such songs as "When the Saints Go Marching In." That a band would be present at the function had not been advertised to the public and was not indicated on the tickets issued. Those attending the reception "came because it was a political event, and not because of the opportunity to hear music." [1]

The Committee paid the Comptroller $4,270 calculated by him to be due on the gross receipts derived from the amounts charged for admission to the reception. Subsequently, the Committee filed with the Comptroller a "Claim for Refund of Tax Erroneously Paid to State of Maryland." The Comptroller denied the claim. The Committee appealed to the Maryland Tax Court, which, after a plenary hearing, affirmed. The Committee appealed to the Circuit Court for Baltimore County. That court, upon the record made in the Tax Court, Md. Code (1957, 1980 Repl. Vol.) Art. 81, § 229 (o), reversed the order of the Maryland Tax Court upon a finding that it was erroneous as a matter of law, *Id.;* and

---

1. This compendium of facts concerning the band is from a stipulation by the parties filed in the Maryland Tax Court, Miscellaneous No. 330, and a part of the record on this appeal.

ordered that the refund claimed be returned with any interest due. The Comptroller appealed to this Court.

Although the Tax Court gave no reasons for its affirmance of the Comptroller's denial of the claim for refund, it is readily apparent from the record of the proceedings before it that the basis of its decision was its belief that the Committee had furnished a performance at which a patron was entitled to be present by reason of the purchase of a ticket. Equally manifest is that the Tax Court concluded that the performance furnished was the playing of music by the band. Therefore, the crux of the determination of the propriety *vel non* of the order of the Circuit Court is the question of what constitutes a performance, and the corollary consideration whether, as a matter of law, the activities of the band in the circumstances fell within the ambit of a performance.

"Performance" as contemplated by § 402 (a) was not defined by the Legislature. Our attention has not been called to a definition of performance in this context which has been adopted by the Comptroller or followed by the Maryland Tax Court. The circuit court judge in this case explicitly declined to define it. The Court of Appeals was "unable to precisely define 'performance' in the terms of its meaning in this admission tax statute. . . ." *Comptroller v. Mandel Re-election Com.,* 280 Md. 575, 584, 374 A.2d 1130 (1977). Each of them, however, despite the absence of a clear-cut definition, was able to conclude whether a certain activity was or was not a performance.[2] The Comptroller had done so in the past under a long-standing policy to collect an admission tax in a case such as this if there were live music.[3]

---

**2.** As Mr. Justice Stewart said about hard-core pornography in his concurring opinion in Jacobellis v. Ohio, 378 U.S. 184, 197, 84 S.Ct. 1676 (1964):

"I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it. . . ."

**3.** At the hearing of the instant case before the Maryland Tax Court, the Director of the Admissions and Amusement Tax Division of the Comptroller of the Treasury testified that the Division had imposed the admissions tax on approximately one thousand political fund raisers, including those similar to the one here. It was the presence of entertainment, he said, that rendered the gross receipts subject to the tax.

*Id.* at 578. After *Mandel,* it seems that he tempered this policy only to the narrowest extent mandated by his interpretation of the facts of that case, namely that for live music not to constitute a performance it must be virtually inaudible as background music, "piddling" in amount, and played by musicians who deliberately make themselves invisible to the patrons. The Maryland Tax Court was apparently of like mind.[4] The circuit court thought that *Mandel* and the case before it were coterminous and followed the *Mandel* rationale in arriving at the decision.

The holding in *Mandel* was that as a matter of law "playing a little bit of organ music behind a curtain under the circumstance of [that] case does not constitute a performance." 280 Md. at 585. The holding had impact beyond the facts on which it was based only to the extent that it established that any live music whatever at a political fund raiser was not *per se* the furnishing of a performance so as to establish tax liability. Remaining open is the question of under what circumstances does the presence of live music at a political fund raiser mount up to the furnishing of a performance?

The Court in *Mandel,* declaring, as we have indicated, that it was unable to define "performance" precisely, stated that it need not attempt to do so for the purposes of the opinion. This was so because it was able to reach its holding upon three factors considered pursuant to the rules of statutory construction:[5] (1) the ordinary meaning of the word performance; (2) the construction placed on the word by

---

4. In the circumstances we place no more significance on the principle of administrative construction, *see* Smith v. Higinbothom, 187 Md. 115, 132-133, 48 A.2d 754 (1946), than did the Court of Appeals in Comptroller v. Mandel Re-election Com., 280 Md. 575, 374 A.2d 1130 (1977). *See* Comptroller v. American Cyanamid Co., 240 Md. 491, 214 A.2d 596 (1965). Nor do we agree with the Comptroller that the "amendment-rejection theory" necessarily leads to the inference in the circumstances here that the Legislature intended not to include any political fund raiser within the ambit of exemptions to the amusement and admissions tax. *See* Prince George's County v. Md. Comm'n, 40 Md. App. 473, 489, 392 A.2d 105 (1978), *vacated on other grounds,* 285 Md. 205, 401 A.2d 661 (1979).

5. The principles relative to statutory construction are so well established as to require no further repetition. They are fully set out in State v. Fabritz, 276 Md. 416, 421-422, 348 A.2d 275 (1975), *cert. denied,* 425 U.S. 942 (1976).

other courts; and (3) the principle as enunciated by the
Supreme Court and repeated and followed by the Court of
Appeals that "[i]n case of doubt [relative to the inter-
pretation of statutes levying taxes] they are construed most
strongly against the government, and in favor of the citi-
zen." 280 Md. at 584. Our perusal of the Court's discussion
of the ordinary meaning of the word performance and con-
struction of it by other courts leads us to this guideline as
consistent with common sense, public concept, and legisla-
tive intent:

> A performance within the contemplation of the
> amusement tax statute is furnished at a political
> fund raiser, like the one here, upon the playing of
> live music with the intention that it be, or with the
> appreciation of it as, the singular attraction, as
> opposed to a diversion while primary interest is
> focused elsewhere.

It is patent that no one was attracted to the Hoyer reception
by the band; that the band would play was not even brought
to the attention of the public in advance. As with the Mandel
cocktail party and buffet dinner, "[t]hose present were
drawn not by the . . . music, but by the combination of
paying homage to respected political friends; . . . and
acquaintances; consumption of a certain amount of bever-
ages, alcoholic and otherwise; and the privilege and pleasure
of basking in the glory of those dominant in the affairs of the
State and its Democratic Party." 280 Md. at 584. And, we
may add, to be seen by the proper persons and recognized as
making a contribution. At the reception the band was not
presented as the piece de resistance; it was no more than an
hors d'oeuvre. Like the musical presentation at the Mandel
party, it was not a musical "performance" as the public
thinks of such matters. Although the band was visible and
audible, it was by no means the singular attraction when it
was playing, and the fact that it could be seen and heard did
not raise it to that level. The music furnished by this local
band did not constitute a primary purpose of the occasion.
There was no response to it by way of dancing. It was but

background music, regardless that it played "Dixieland" pieces, characterized in the stipulation as "rally music," whatever that may connote. It is probable that the attention of many of those in attendance, even if they were aware that music was being played, was not focused on the music or its source but on general conviviality. The music did not even comprise an interlude in the course of the activities traditional at such affairs — drinking, eating, and meeting people. It was simply a diversion while the primary purposes of the reception continued. The short of it is that the circuit court was correct in holding as a matter of law that the music presented at the political fund raiser "in honor of Steny H. Hoyer for Governor" did not constitute the furnishing of a performance within the contemplation of Art. 81, § 402 (a) and in ordering a refund of the tax paid.

*Judgment affirmed.*
*Costs to be paid by appellant.*