**BALDWIN v. SCHMIDT et al.**
No. 7271.

United States District Court
W. D. Missouri, W. D.
July 8, 1952.

Warren A. Drummond, Kansas City, Mo., for plaintiff.

Theo. C. Anderson, Kansas City, Mo., for defendants.

REEVES, Chief Judge.

The plaintiff seeks treble damages under the Housing and Rent Act of 1947, as provided by Section 1895, Title 50 U.S.C.A. Appendix. Plaintiff became a tenant occupant of the premises located at 2304 Spruce Avenue, Kansas City, Missouri, on December 16, 1950 and vacated said premises on November 15, 1951. During said period (being 11 months) he paid a rental of $80 per month whereas he claims that the maximum rental fixed by the Expediter was $20 per month. He seeks, therefore, an overpayment of $660 and asks recovery of that sum with damages or penalties as provided by the statute.

It appeared from the separate answer of Glenn C. Schmidt that he had nothing to do with the transaction and should be dismissed from the proceeding. Jean Schmidt, the owner of the property, and to whom the rents were paid, denies generally the averments of the complaint and sets up affirmative defenses.

The testimony tended to show that the defendant, Jean Schmidt and her then-husband acquired the property as an estate by the entirety on October 18, 1946. The property was then occupied by a tenant. On December following, the defendant caused the deed conveying the property to her husband and herself to be exhibited to the Office of Price Administration as an aid to an eviction which they sought for ownership occupancy. This was obtained in February, 1947, and between the first and middle of February, 1947, the owners having obtained possession of the property by eviction, went into its occupancy. The deed to defendant and her then-husband was from one Mrs. Cora Smith, and, as indicated, was dated October 18, 1946.

The OPA became familiar with the prior tenancy at the time the defendant and her husband sought its aid in obtaining an eviction for their occupancy and began a correspondence with Mrs. Cora Smith who had parted with title. It obtained from her a registration of the premises. The first registration was deemed insufficient and she was required to file another. This was done early in the year 1947, and on February 14, 1947 the Expediter made an order upon the registration of Mrs. Smith, the former owner, fixing the rental on the property at $20 per month. The defendant never knew of such registration, nor of the order fixing the rental at $20 per month. At a later time, while still occupying the property, the defendant obtained full title to the property, and, in the year 1949, interviewed the OPA in respect of a rental of the property. She was not then advised of the order heretofore mentioned, but, on the contrary, was instructed to charge such rental as she might see fit until a proper order could be made. On December 16, 1950, she negotiated a rental contract with the plaintiff and late in the year 1951 she was advised by the OPA of a maximum rental order made upon the attempted registration of Mrs. Cora Smith.

1. The only question for decision is whether the order of February 14, 1947, is binding upon the defendant. Registration is not provided by statute but is a question of regulation by the Expediter. The registration regulation provides that "every landlord of controlled housing accommoda-

tions rented or offered for rent shall file in triplicate a written statement on the form provided therefor to be known as a registration statement, * * *."

■ At the time Mrs. Smith, the former owner, filed the registration, statement she was not the landlord of a controlled housing accommodation, and, moreover, with the knowledge of the OPA the property had been withdrawn as a housing accommodation and was owner-occupied. For that purpose the Office of Housing Administration had approved the eviction of a tenant. Later on, by statute, owner-occupied property was decontrolled. According to the evidence, the first registration by Mrs. Smith was held invalid but it is contended by counsel for plaintiff that the second registration was valid. It could not be valid. Mrs. Smith was at the time not "a landlord of controlled housing accommodations rented or offered for rent." The property was then owned and occupied by the defendant and her husband. It had been withdrawn as a housing accommodation and the owner had no knowledge of the registration filed by a former owner at a time when such former owner had no interest in the property. While it is true that a new owner may be bound by an order against a former owner, if made while the former owner owned and controlled the property, yet in this case the one who filed the registration statement was a stranger to the title and the defendant could not and should not be bound by such registration. Moreover, the defendant sought information when she was on the moment of offering the property for rent, and was not then advised that any order had ever been made affecting her property. On the contrary, she was told that she was at liberty to rent the property at a price to be fixed by her and that later an appropriate order would be made. Under such circumstances, to give judgment against the defendant would be to deprive her of her property without due process of law.

2. In the case of Woods v. Macken, 4 Cir., 178 F.2d 510, 513, the court upheld a judgment against a landlord by saying

that the Expediter was under no obligation "to advise a landlord of the maximum rental he may charge upon his filing additional registration statements." In this case the landlord had filed no registration statement. The Expediter had sought to enforce a maximum rental charge upon a statement filed by one who had no interest in the property.

■ 3. While, generally, due process would not require a hearing in rent control cases, Bowles v. Willingham 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892, yet in this case certainly the defendant would be entitled to a hearing which she sought. The case of Woods v. Tate, 5 Cir., 171 F.2d 511, loc. cit. 512, does not aid the plaintiff. In that case the court said:

"The rent regulations contemplate that a subsequent owner will be bound by a rent increase or reduction order issued to a previous owner of the same premises."

This ruling was made upon the theory that the order was made when the previous owner was the landlord. The court further said:

"Moreover, when defendant came into ownership of this property, if she lacked knowledge as to the existence of any orders affecting the maximum rent allowable on the premises, it was incumbent upon her to consult with the proper OPA authorities for such information, in order that rent exacted from her tenant would not be at variance with the regulations."

In this case no maximum rental had been fixed at the time "defendant came into ownership of this property." She came into ownership on October 18, 1946, whereas the rental order was made against a former owner as of February 14, 1947. This was done without notice to the defendant, and, furthermore, as stated, the property had been withdrawn by her as a housing accommodation and the OPA knew that. When later on she offered it for rent, the Expediter instructed her to make such charges as she might think proper until a proper order of the Expediter could be

made. Under such circumstances the order of February 14, 1947, was clearly invalid and not binding upon the defendant. It follows that the plaintiff is not entitled to recover, and the judgment of the court should be for the defendant.