# VILLA NOVA NIGHT CLUB, INC. *v.* COMPTROLLER OF THE TREASURY OF THE STATE OF MARYLAND

[No. 187, September Term, 1969.]

*Decided January 7, 1970.*

382

The cause was submitted on brief to HAMMOND, C. J.,. and McWILLIAMS, FINAN, SINGLEY and DIGGES, JJ.

Submitted by *Jacob Blum* and *Blum, Yumkas & Mailman* for appellant.

Submitted by *Francis B. Burch, Attorney General,* and *Jon F. Oster, Assistant Attorney General,* for appellee.

SINGLEY, J., delivered the opinion of the Court.

Chap. 161, § 2 of the Laws of 1969, effective 1 June 1969, amended Maryland Code (1957, 1965 Repl. Vol., 1969 Supp.) Art. 81, § 402 and increased from one-half of one percent to four and one-half percent the tax on the gross receipts of "every person, firm or corporation derived from the amounts charged for * * * admission, cover charge for seats or tables, refreshment, service or merchandise at any roof garden, cabaret or other similar place where there is furnished a public performance when payment of such amounts entitles the patron thereof to be present during any portion of such performance."

Chap. 161, § 1 amended Code, Art. 81, § 324, and increased the rate of Maryland's retail sales tax from three percent to four percent, effective 1 July 1969. At the same session, the General Assembly enacted Chap. 755, which amended Art. 81, § 403 and added Baltimore City to those incorporated cities and towns[1] which are permitted to impose a gross receipts tax to the same extent and in the same manner (but not necessarily in the same amount) as that imposed by Art. 81, § 402.

Villa Nova Night Club, Inc. (Villa Nova), which operates the Villa Nova Show Bar at 418 East Baltimore Street in Baltimore, was understandably alarmed by the. prospect that its patrons would pay, directly or indirectly, a tax of eight and one-half percent on beverages and refreshments served there and by the certainty that this might be increased if Baltimore City elected to act in the

---

1. Chap. 755 still excludes towns and municipalities in Baltimore, Frederick, Allegany, Washington, Somerset and Dorchester Counties.

manner permitted by Chap. 755.[2] Villa Nova filed a bill in the Circuit Court of Baltimore City for a declaratory decree and injunctive relief, alleging that the manner in which taxpayers were classified by Art. 81, § 402, both before and after the 1969 amendment, was arbitrary, discriminatory and capricious, and that § 402 was therefore unconstitutional. A similar attack was levied at Chap. 755, coupled with the additional contention that Code, Art. 2B, § 26 (a) precludes the imposition of alcoholic beverage license fees or taxes by cities and towns, except as permitted by Art. 2B, which provides for the imposition of no tax by cities and towns on the gross receipts derived from the sale of such beverages. It is from an order dismissing the bill of complaint that Villa Nova has taken this appeal.

Villa Nova argues that the lower court was in error (i) in failing to find that Art. 81, § 402 is unconstitutional; (ii) in failing to pass on the legality of Chap. 755 of the Laws of 1969; and (iii), in failing to find that Chap. 755 is unconstitutional. We shall affirm the order dismissing the bill of complaint.

## (i)

Art. 81, § 402, as amended by Chap. 161, § 2 of the Laws of 1969, Admissions and Amusement Tax—Levy and amount, provides:

> "There shall be levied, collected and paid a tax at the rate of four and one-half per centum (4½%) of the gross receipts of every person, firm or corporation derived from the amounts charged for (1) admission to any place, whether such admission be by single ticket, season ticket or subscription, (2) admission within an

---

2. Villa Nova's amended bill was filed on 26 May 1969 and the case was heard on 28 May. Sometime in June 1969, the Mayor and City Council of Baltimore enacted Ordinance No. 510, which imposed a tax of one and one-half percent on the gross receipts of roof gardens and cabarets until such time as the four percent state sales tax is repealed or declared invalid, when the rate would be increased to five and one-half percent.

enclosure in addition to the initial charge for admission to such enclosure, (3) the use of sporting or recreation facilities or equipment, and (4) admission, cover charge for seats or tables, refreshment, service or merchandise at any roof garden, cabaret or other similar place where there is furnished a public performance when payment of such amounts entitles the patron thereof to be present during any portion of such performance. The term 'roof garden or other similar place,' shall include any room in any hotel, restaurant, hall or other public place where music or dancing privileges or other entertainment, except mechanical music, radio or television, alone, and where no dancing permitted, are afforded the patrons in connection with the serving or selling of food, refreshment or merchandise. It is further provided that this section shall not apply to bowling alleys or lanes."

Villa Nova mounts its attack on the constitutionality of § 402 in a succinct fashion:

"Article 81, Section 402, subtitle 'Admissions and Amusement Tax', imposes a tax on admissions and amusements. It operates in varied forms. Theaters, ball parks, skating rinks and others who charge a direct admission fee are required to pay a tax on the gross receipts from such admission charges. They pay no tax on the receipts from the sale of food, drink, souvenirs or other merchandise customarily purchased incident to attendance at theaters, ball parks or the like. Cabarets, on the other hand, such as that operated by Villa Nova, although taxed under the same general scheme of raising revenue by imposing a tax on admissions and amusement, are required to pay a tax on gross receipts derived not only from admission fees,

even where one is charged, but also from food and drink sold while entertainment is furnished.

"Thus, the law distinguishes between the taxpayers upon whom the tax is imposed. This difference in treatment creates a sub-classification of taxpayers, among whom is the Villa Nova, who are required to pay their tax calculated on an entirely different basis than others taxed by the same taxing measure.

"The disparity in the application of the tax, it is submitted, demonstrates a hostility and oppressiveness against the operators of cabarets, in violation of the constitutional requirement of due process of the law and denies them the equal protection of the law — rights guaranteed in both the State and Federal Constitutions, Article 23, the Declaration of Rights, Maryland Constitution; Fourteenth Amendment to the United States Constitution."

It is quite apparent that § 402 is structured in a fashion strikingly similar to § 1700 (e) (1) of the Internal Revenue Code of 1939, as amended, 26 U.S.C. § 1700 (e) (1), which imposed the federal cabaret tax, since repealed, and provided in part:

"A tax equivalent to 20 per centum of all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is entitled to be present during any portion of such performance. The term 'roof garden, cabaret, or other similar place' shall include any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serv-

ing or selling of food, refreshment or merchandise."

The federal tax statute was before the courts in *Geer v. Birmingham*, 88 F. Supp. 189 (D. Iowa) *rev'd,* 185 F. 2d 82 (8th Cir. 1950) and more recently in *Jones v. Fox,* 162 F. Supp. 449 (D. Md. 1958). What Judge Watkins said in the latter case is particularly apposite here:

> "* * * A tax on admissions alone was unsatisfactory in that it did not reach those establishments which, while offering entertainment, did not charge an admission fee but rather derived their revenue from the sale of food and drink. Therefore, Congress decided to treat a certain percentage of the gross receipts of such establishments as an admission fee and apply the admission tax to such percentage."

and then quoted from *Geer v. Birmingham*:

> " 'Thus, from its inception, the admissions tax was imposed *upon the general field of entertainment,* which was further subdivided for purposes of the imposition of the tax into two different categories because of the nature of the entertainment subject to the tax. On the one hand was that form of entertainment to which a direct admission charge was made upon the patrons, as is the case with theaters, skating rinks or the like, and on the other hand that form of entertainment to which no admission charge as such was made but rather the charge for admission was included in whole or in part in the price paid by the patron for refreshment, service or merchandise. "What are commonly known as cabarets" comprise this second category.' (Geer v. Birmingham, 88 F. Supp. 189, 197)." (Emphasis supplied by the Court.) *Jones v. Fox,* 162 F. Supp. at 460.

While admittedly the question of the equal protection guaranties of the Fourteenth Amendment was not raised in *Jones v. Fox,* we have relied in the past on the Supreme Court's statement in *Allied Stores of Ohio, Inc. v. Bowers,* 358 U. S. 522, 526-27, 79 S. Ct. 437, 3 L.Ed.2d 480 (1959) :

> "* * * The States have a very wide discretion in the laying of their taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the National Government or violating the guaranties of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to ensure revenue and foster their local interests. Of course, the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. The State may impose different specific taxes upon different trades and professions and may vary the rate of excise upon various products. It is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value. [citing cases]."

In *Lane Constr. Corp. v. Comptroller,* 228 Md. 90, 178 A. 2d 904 (1962), where we were considering an attack on the constitutionality of the Maryland Use Tax, Art. 81, §§ 372-393, we said:

> "This has been made apparent by the cases in the Supreme Court dealing with the equal protection clause. *It has been held not to impose on the states the requirement of absolute mathematical equality in regard to taxation. Rather,*

*il permits great 'flexibility and variety that are appropriate to reasonable schemes of state taxation' as long as a classification is not per se or in practical operation palpably arbitrary. Allied Stores of Ohio, Inc. v. Bowers,* 358 U. S. 522, 526, 3 L.ed.2d 480. *'[T]he presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive demonstration against particular persons and classes.' Madden v. Kentucky,* 309 U. S. 83, 88, 84 L. ed. 590. If on any imaginable factual basis, the state legislature had a reason to distinguish between certain transactions, and thus to tax them somewhat differently, the classification will be upheld. *Allied American Co. v. Comm'r,* 219 Md. 607, 623." (Emphasis supplied.) 228 Md. at 97.

As we see it, Villa Nova's argument that § 402 amounts to a denial of equal protection is grounded on a misconception of the scheme of classification. The statute draws a distinction among four situations:

1. The typical admission charge imposed by theaters, ball parks, skating rinks and the like;
2. A second admission charge, such as that imposed for a reserved seat once a general admission charge has been paid;
3. Charges made for the use of sporting or recreational facilities or equipment; and
4. Charges for refreshment, service or merchandise at any place where there is music, dancing or other entertainment, whether or not there is an admission or cover charge, as well as for admission, if such a charge is imposed.

This was the distinction which Judge Watkins made in *Jones v. Fox, supra,* when he quoted the *Geer v. Birmingham* distinction between the "form of entertainment to which a direct admission charge was made upon the

patrons" and the "form of entertainment to which no admission charge as such was made but rather the charge for admission was included in whole or in part in the price paid by the patron for refreshment, service or merchandise." In our view, this is a simple and appropriate classification of taxpayers and not, as Villa Nova would have it, an impermissible sub-classification, which might have been the case had cabarets been taxed at one rate and roof gardens at another. It is certainly not "a classification [which] is a hostile and oppressive demonstration against particular persons and classes," *Lane Constr. Corp. v. Comptroller,* 228 Md. 90, 178 A. 2d 904 (1962).

As additional evidence of a discriminatory policy, Villa Nova urges that Art. 81, § 326 (p) exempts admission tickets from the Maryland sales tax so long as gross receipts are taxed under § 402, while refreshment and beverages sold in a cabaret are subject to both the gross receipts tax and the sales tax, even though some portion of the charge might properly be allocable to an admission charge. Compare *Plymouth Lanes, Inc. v. Plymouth Township,* 415 Pa. 206, 202 A. 2d 811 (1964) dealing with a Pennsylvania statute which makes such an allocation.

We think that the lower court was quite correct in pointing out that if this be discrimination, it is not directed at the cabaret. If a sales tax is payable on the portion of the total charge allocable to the cost of admission, it is the customer, not Villa Nova, who pays. See Code, Art. 81, § 325. And the fact that Pennsylvania may have adopted a mechanism which distributes the tax burden in a manner which Villa Nova regards as more equitable can scarcely support a conclusion that every other method of taxation must be discriminatory.

We have no difficulty in distinguishing the cases on which Villa Nova relies, since all of them involved classifications which were palpably discriminatory. In *Calvert v. McLemore,* 163 Tex. 562, 358 S.W.2d 551 (1962), the Texas court struck down a statute which taxed admis-

sions in excess of $1.05 charged by regularly established theaters and admissions in excess of 51¢ charged in other places. *Airway Drive-In Theatre Co. v. City of St. Ann,* 354 S.W.2d 858 (Mo. 1962) invalidated a license tax imposed on drive-in theaters at an annual rate of $1.50 per speaker and on indoor theaters at a flat rate of $50.00 because the tax imposed on drive-in theaters was 17 to 30 times greater than that imposed on motion picture houses. In *Anne Arundel County v. English,* 182 Md. 514, 35 A. 2d 135, 150 A.L.R. 842 (1943) we held to be unconstitutionally discriminatory a $30 tax imposed on house trailers on temporary foundations and not on dwellings on permanent foundations. In *Great A & P Tea Co. v. Board of Comm'rs of Camden,* 122 N.J.L. 47, 4 A. 2d 16 (1939) an ordinance which imposed a $10,000 annual license fee on self-service food stores but not on others was held unconstitutional. *Quaker City Cab Co. v. Pennsylvania,* 277 U. S. 389, 48 S. Ct. 553, 72 L. Ed. 927 (1928) held unconstitutional a tax imposed on the gross receipts of corporations operating taxicabs because it did not apply to the receipts of individuals and partnerships. *Rebsamen Motor Co. v. Phillips,* 226 Ark. 146, 289 S.W.2d 170 (1956) struck down a license fee imposed on franchised dealers who sold new and unused cars, but not on unfranchised dealers who sold both new and used cars.

The point is that the Legislature, when it passes a revenue measure, has the power to classify, and may impose varying tax burdens on different groups. It is only when the attempted classification has no reasonable basis in the nature of the businesses classified and burdens are imposed unequally on taxpayers between whom there is no real difference that the courts will interfere. We cannot accept Villa Nova's contention that in adopting § 402 the General Assembly arbitrarily and unreasonably discriminated between different modes of doing the same business. What was said in *Allied American Co. v. Comm'r,* 219 Md. 607, 150 A. 2d 421 (1959) is appropriate here:

"The constitutional need for equal protection

does not shackle the legislature. It has the widest discretion in classifying those who are to be regulated and taxed. Only if the grouping is without any reasonable basis, and so entirely arbitrary, is it forbidden. Abstract symmetry or mathematical nicety are not requisites. The selection need not depend on scientific or marked differences in things or persons or their relations. If any state of facts reasonably can be conceived that would sustain a classification, the existence of that state of facts as a basis for the passage of the law must be assumed. The burden is on him who assails a classification to show that it does not rest on any reasonable basis. [citing cases]." 219 Md. at 623.

### (ii), (iii)

Villa Nova argues that the court below erred in declining to pass on the legality of Chap. 755 of the Laws of 1969 and in failing to find that it was unconstitutional. The short answers to these contentions are those given by the chancellor in his order: that there was no question as to a possible conflict between Code, Art. 2B, § 26 (a) and Chap. 755 of the Laws of 1969, because at the time of the hearing, no ordinance implementing Chap. 755 had been adopted or proposed by Baltimore City. It is well settled that our courts will not render advisory opinions on proposed legislation. *Planning Comm'n v. Randall,* 209 Md. 18, 120 A. 2d 195 (1956) ; *Tanner v. McKeldin,* 202 Md. 569, 97 A. 2d 449 (1953) ; *Hammond v. Lancaster,* 194 Md. 462, 71 A. 2d 474 (1950).

Furthermore, the constitutionality of that part of Chap. 755 which affected Baltimore City could not be passed on in a proceeding for declaratory relief to which the City was not a party. Code, Art. 31 A, § 11; *Givner v. Cohen,* 208 Md. 23, 116 A. 2d 357 (1955).

*Order affirmed, costs to be paid by appellant.*