528 A.2d 546

## COMPTROLLER OF THE TREASURY

v.

## BURN BRAE DINNER THEATRE CO., INC. T/A Burn Brae Dinner Theatre.

No. 1707, Sept. Term, 1986.

Court of Special Appeals of Maryland.

July 17, 1987.

Linda Koerber Boyd, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Deborah B. Bacharach and Gaylin Soponis, Asst. Attys. Gen., on the brief), Baltimore, for appellant.

Robert K. Goren (Harvey A. Jacobs and Belli, Jacobs, Weil & Jacobs, on the brief), Rockville, for appellee.

Argued Before GILBERT, C.J., and MOYLAN and ALPERT, JJ.

ALPERT, Judge.

Appellant, Comptroller of the Treasury (the Comptroller), has taken this appeal from a judgment of the Circuit Court for Montgomery County affirming a decision of the Maryland Tax Court. The tax court had reversed an assessment against appellee, Burn Brae Dinner Theatre Company, Inc. (Burn Brae). The single issue presented is whether receipts derived from the sale of refreshments during intermission at a dinner theatre are subject to an admissions and amusement tax. For the reasons that follow, we affirm the holding of the circuit court that Burn Brae's intermission refreshment receipts are not subject to that tax.

Pursuant to Article 81, Section 402(a)(4), Annotated Code of Maryland, counties may levy a tax on gross receipts derived from amounts charged for:

> refreshment, service or merchandise at any roof garden, cabaret or similar place where there is furnished a performance.

Md.Ann.Code Art. 81, § 402(a)(4) (1980 Repl. Vol.).[1] Montgomery County taxes such receipts obtained from sources within its boundaries.

The Burn Brae Dinner Theatre first opened in 1968. Since that time it has offered the same fare: patrons purchase a ticket upon entering which entitles them to a dinner and to be present during a performance.[2] Dinner is served before the show at tables surrounding the stage. During intermission, guests may order refreshments paid for separately from the ticket purchased upon entering. It is possible to enter at intermission and purchase a refreshment, but buying refreshments does not entitle one to see the show. Drink prices during the break are not inflated to cover the cost of the performance. Once the show resumes, no refreshments are sold, though drinks bought during intermission are frequently consumed after the show continues.

Burn Brae has always remitted an admissions and amusement tax on receipts derived from tickets sold at its door. The dinner theatre, however, has never remitted such a tax from receipts derived from the sale of refreshments during intermission. In February, 1983, the Comptroller levied an $8,054 [3] assessment against Burn Brae for failing to pay an admissions and amusement tax on the intermission refreshment receipts. This assessment included the period from January 1, 1979 through October 31, 1982. Burn Brae applied for a revision of the assessment, which application the Comptroller denied. The Maryland Tax Court reversed

---

1. At all times relevant to this appeal, the cabaret refreshment component of Maryland's admissions and amusement tax was codified as § 402(a)(4) in the 1980 Replacement Volume. It is presently found at § 402(a)(2)(iv) of the 1986 Cumulative Supplement to that volume. Citations are to the 1980 Replacement Volume unless otherwise indicated.

2. The performances are Broadway plays.

3. Including interest and penalties, the total assessment exceeded $14,-000.

that denial and the circuit court affirmed the decision of the tax court. This appeal followed.

▮ The scope of appellate review in these matters has been succinctly stated:

[J]udicial review of decisions of the Maryland Tax Court is severely limited. Maryland Code (1957, 1980 Repl.Vol., 1986 Cum.Supp.), Art. 81, § 229(*o*), provides that on appeal "[t]he circuit court shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record." When this Court reviews a Tax Court decision, the narrow scope of review set forth in § 229(*o*) is equally applicable. *See, e.g., Ramsay, Scarlett & Co. v. Comptroller*, 302 Md. 825, 834, 490 A.2d 1296, 1303 (1985); *Comptroller v. Haskin*, 298 Md. 681, 689–90, 472 A.2d 70, 76–77 (1984); *Comptroller v. Diebold, Inc.*, 279 Md. 401, 407, 369 A.2d 77, 81 (1977).

*Supervisor of Assess. v. Group Health Ass'n*, 308 Md. 151, 156, 517 A.2d 1076 (1986). Like the Court of Appeals, we, too, are limited by the narrow scope of review set forth in § 229(*o*). *See Comptroller v. Shell Oil Co.*, 65 Md.App. 252, 259, 500 A.2d 315 (1985). First, we visit the tax court's decision to ensure that its order was not premised upon an erroneous conclusion of law. *See Ramsay, Scarlett and Co.*, 302 Md. at 834, 490 A.2d 1296.

The tax court quoted *Villa Nova Night Club, Inc. v. Comptroller*, 256 Md. 381, 260 A.2d 307 (1970), to support its view that: "[t]he issue here boils down to whether the sale of refreshments by [Burn Brae] was integral to the entertainment it provided and thus subject to admissions and amusement tax or whether such sales were discrete from the provision of entertainment and thus not within the purview of Section 402(a)." Unfortunately, the passage lifted by the tax court from *Villa Nova* to support its analysis was a recital of the taxpayer's argument. The Court of Appeals, however, did not adopt the quoted argument in reaching its decision. Additionally, the version of

§ 402(a)(4) construed by the court in *Villa Nova* levied a tax upon:

> admission, cover charge for seats or tables, refreshment, service or merchandise at any roof garden, cabaret or other similar place where there is furnished a public performance *when payment of such amounts entitles the patron thereof to be present during any portion of such performance.*

256 Md. at 385, 260 A.2d 307 (emphasis added). The language emphasized above invited the taxpayer to argue that refreshments were subject to the tax only if their purchase entitled the patron to see the show. These words, however, were deleted from § 402(a)(4) by a 1971 revision to the statute. 1971 Md.Laws ch. 429. Thus, the decision of the tax court in the case at bar was premised on an erroneous legal analysis. Consequently, we are under no statutory constraints in reviewing that order. *Ramsay, Scarlett and Co.,* 302 Md. at 834, 490 A.2d 1296.

During the period relevant to this appeal, 1979 to 1982, Section 402(a) read in pertinent part:

Admissions and Amusement Tax

§ 402. Levy and amount.

(a) *Counties.*—Effective July 1, 1972, any county by resolution may levy a tax on the gross receipts of every person, firm or corporation obtained from sources within the county derived from the amounts charged for (1) admission to any place, whether the admission be by single ticket, season ticket or subscription, including a cover charge for seats or tables at any roof garden, cabaret or other similar place where there is furnished a performance, if payment of the amounts entitles the patron thereof to be present during any portion of the performance; ... and (4) refreshment, service or merchandise at any roof garden, cabaret or similar place where there is furnished a performance.

. . . . .

The term "roof garden or other similar place" shall include any room in any hotel, restaurant, hall or other place where music or dancing privileges or other entertainment, except mechanical music, radio or television, alone, and where no dancing is permitted, are afforded the members, guests, or patrons in connection with the serving or selling of food, refreshment or merchandise. Md.Ann.Code Art. 81 § 402(a) (1980 Repl.Vol.). To resolve this appeal, we have only to apply § 402(a) to the facts before us, so as to give effect to the purpose and intention of the legislature. *Kaczorowski v. Mayor and City Council of Baltimore*, 309 Md. 505, 512–13, 525 A.2d 628 (1987); *College Park v. Cotter*, 309 Md. 573, 587, 525 A.2d 1059 (1987); *Comptroller v. Mandel Re-Election Comm.*, 280 Md. 575, 578–79, 374 A.2d 1130 (1977) [construing Art. 81, § 402(a)].

Where there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intention of the Legislature.... On the other hand, as stated in *Maguire v. State*, 192 Md. 615, 623, 65 A.2d 299, 302 (1949), "[a]dherence to the meaning of words does not require or permit isolation of words from their context ' * * * [since] the meaning of the plainest words in a statute may be controlled by the context....' "

In construing statutes, therefore, results that are unreasonable, illogical or inconsistent with common sense should be avoided whenever possible consistent with the statutory language, with the real legislative intention prevailing over the intention indicated by the literal meaning.

*Mandel Re-Election Comm.*, 280 Md. at 579–80, 374 A.2d 1130, quoting *State v. Fabritz*, 276 Md. 416, 348 A.2d 275 (1975) (Citations omitted). Further,

[i]n interpreting tax statutes a court must not extend their provisions by implications beyond the clear import of the language employed and where there is doubt as to such a statute's scope, it should be construed most strongly in favor of the citizen and against the state.

*Fair Lanes v. Comptroller,* 239 Md. 157, 162, 210 A.2d 821 (1965).

The Comptroller contends that Burn Brae is a "cabaret or similar place where there is furnished a performance" and consequently, refreshments sold there are subject to a section 402(a)(4) tax. Burn Brae contends that it is akin to a traditional theatre, like Center Stage or the Lyric Opera House and that its intermission refreshments, like those sold at Center Stage and the Lyric, are not subject to the tax. These divergent contentions point to an ambiguity in § 402(a): the meaning of "roof garden, cabaret or similar place." Attention is immediately attracted to the statute's definition of that phrase only to be frustrated by its failure to include the term "cabaret." Further, the definition provided only adds to the confusion: the places to be taxed are those places where entertainment is afforded "in connection with" the serving or selling of food, refreshments or merchandise. What "connection" must exist between the entertainment and the sale of refreshments is not clear. The Comptroller argues that a place which allows refreshments to be consumed in an entertainment area is a roof garden or similar place. Burn Brae, on the other hand, argues that the cost of the entertainment must be included in the price of the refreshments and that the drinks must be served during the show. Both arguments are well taken, and invite a review of legislative history in order to find the intent of the General Assembly. *Howard County v. Carroll,* 71 Md.App. 635, 644, 526 A.2d 996 (1987).

Maryland's admissions tax was adopted in 1936. It levied a tax upon gross receipts from:

any admission or cover charge for seats and tables, reserved or otherwise, at any restaurant, hotel, cafe, night club, cabaret, roof garden or similar place furnishing a floor show or similar entertainment. In cases where there is no charge for admission or cover charge to such place of entertainment, furnishing a floor show or similar entertainment, but a charge for admission is wholly or in part included in the price paid for refreshments,

service or merchandise, an equivalent tax shall be levied and collected upon twenty per cent of the gross receipts from refreshments, service and merchandise.

1936 Md.Laws, ch. 10, § 3. Clearly, the thing taxed was the *admissions* receipt, that is, the charge for permission to enter the building. *See Scoville Serv. Inc. v. Comptroller*, 269 Md. 390, 395, 306 A.2d 534 (1973). Appropriately, the statute was entitled "admissions" tax. If an establishment charged no admissions but, instead, included the charge for entering in the price paid for refreshments, the tax was levied upon the refreshment receipts. In this regard, the Maryland admissions tax was strikingly similar to its contemporary federal counterpart, § 500 of the Revenue Act of 1927, as amended, 26 U.S.C. § 500. The legislative history of the federal admissions tax reveals that its drafters intended to levy a tax upon "all places to which admissions is charged." *Geer v. Birmingham*, 88 F.Supp. 189, 196 (D.Iowa 1950), *rev'd*, 185 F.2d 82 (8th Cir.1950), quoting H.R. Report No. 45, 65th Congress; 1st Sess., 1917–18. The tax bill, however, was amended to include "cabarets" which charged no admissions but included the price of admissions in refreshments, services or merchandise. *Id.,* 88 F.Supp. at 196. Thus, as adopted in 1917, the federal admissions tax statute charged,

(a) a tax of 1 cent for each 10 cents or fraction thereof of the amount paid for admission to any place, including admission by season ticket or subscription, to be paid by the person paying for such admission * * *.

(c) a tax of 1 cent for each 10 cents or fraction thereof paid for admission to any public performance for profit *at any cabaret or other similar entertainment to which the charge for admission is wholly or in part included in the price paid for refreshment, service, or merchandise.*

26 U.S.C. § 700(a) and (c) (1917) (emphasis added). In 1918 the term "roof garden" was added to the statute to "delineate more precisely the term cabaret...." *Geer,* 88 F.Supp. 198. With that exception, the federal law under-

went no significant change from 1917 to 1936, the year
Maryland adopted its counterpart. *See Id.* Interestingly,
in 1934 and 1935, the Treasury Department adopted regula-
tions to account for cabarets that imposed a minimal admis-
sion charge and inflated refreshment prices during perform-
ances. *Id.* at 202; *see also, Lethert v. Culbertson's Cafe,
Inc.,* 313 F.2d 506, 510 (8th Cir.1963). Thus, by the time
Maryland adopted its admissions tax, federal law reflected a
policy of imposing a tax "upon what would be a fair and
reasonable admission in comparison with other charges ...,
whether such amount was charged to their patrons as an
ordinary admission or was disguised in the price patrons
had to pay for refreshment, service or merchandise." *See
Geer,* 88 F.Supp. at 201. That very policy was echoed in the
language of the Maryland statute.

A 1949 revision to the Maryland admissions tax reshaped
the law into a configuration more closely resembling that
which currently exists. By Chapter 255, Section 2 of the
Acts of 1949, the statute was made to read:

ADMISSIONS AND AMUSEMENT TAX

There shall be levied, collected and paid a tax at the
rate of one-half of one percentum (½%) of the gross
receipts of every person, firm or corporation derived from
the amounts charged for (1) admission to any place,
whether such admission be by single ticket, season ticket
or subscription [and]

．　　．　　．　　．　　．

(4) admission, cover charge for seats or tables, refresh-
ment, service or merchandise at any roof garden, cabaret
or other similar place where there is furnished a public
performance when payment of such amounts entitles the
patron thereof to be present during any portion of such
performance. The term "roof garden or other similar
place" shall include any room in any hotel, restaurant,
hall or other public place where music or dancing privi-
leges or other entertainment, except mechanical music,
radio or television, alone, and where no dancing is permit-

ted, are afforded the patrons in connection with the serving or selling of food, refreshment or merchandise. Md.Ann.Code Art. 81, § 338(1) and (4) (1949) (repealed). Like its predecessor, § 338(1) taxed admissions (the charge to enter). In addition, § 338(4) taxed any charge that "entitle[d] the patron ... to be present during any portion of [the] performance." This 1949 version reflected changes that had been made to the federal counterpart since 1936.[4] Specifically, both statutes levied a tax upon all admissions charges and upon refreshments receipts when the right to see the show was included in the price of the refreshments. The distinction between charges entitling the patron to enter and charges entitling him to be present during the performance was made in response to cabarets that collected a minimal admissions fee and inflated refreshment prices during performances. *See Geer*, 88 F.Supp. at 197. The appearance, for the first time, of "amusement [tax]" in the title of this legislation suggests further that the General Assembly intended to tax charges for the privilege of seeing the entertainment in addition to charges for the right to enter the premises. *See Kaczorowski*, 309 Md. at 515, 525 A.2d 628 (bill's title may be considered in discerning legislative purpose).

In 1971 the General Assembly repealed and re-enacted this tax statute "to change the kinds of places and events to which the State tax on admissions and amusements is charged on amounts for entrance to such places or events"

---

**4.** By 1949, the federal admissions tax was imposed on admissions to any place and on:

all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is *entitled to be present during any portion of such performance.* The term "roof garden, cabaret, or other similar place" shall include any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise.

26 U.S.C. 1700(a) and (e)(1) (1939, as amended) (emphasis added).

1971 Md.Laws ch. 429. As amended, section 402 [5] separates admission receipts from refreshment receipts, places them in different subsections and levies a tax upon both. The amended statute is the version we are called to construe. It assesses a tax against:

> admission to any place, whether the admission be by single ticket, season ticket or subscription, including a cover charge for seats or tables at any roof garden, cabaret or other similar place where there is furnished a performance, if payment of the amounts entitles the patron thereof to be present during any portion of the performance;

Md.Ann.Code Art. 81, § 402(a)(1) (1980 Repl.Vol.), and against

> refreshment, service or merchandise at any roof garden, cabaret or similar place where there is furnished a performance,

*Id.*, § 402(a)(4). The definition of "roof garden or other similar place" remains unchanged from the 1949 code. *See, supra*, p. 324. Significantly, the language "if payment of the amounts entitles the patron ... to be present during any portion of the performance," which previously modified "refreshment" as well as "admission," no longer modifies "refreshment." Thus, at first blush, § 402(a)(4) would appear to levy a tax on refreshment receipts at any place furnishing a performance regardless of whether the purchase of refreshments entitles the patron to attend the performance. This interpretation, which the Comptroller urges, is too broad for several reasons.

■ First, by its own terms, the tax applies to refreshment receipts at places where entertainment is afforded "in connection with the serving or selling of food, refreshments or merchandise." Md.Ann.Code art. 81, § 402(a)(4) (1980 Repl.Vol.). The critical inquiry then is whether the entertainment is afforded "in connection with" the refreshments.

---

**5.** By 1971, the statute had been recodified as section 402 of Article 81.

That inquiry, in turn, leads immediately to the question: what "connection" must exist between the two? We have demonstrated the striking similarities between the Maryland and federal admissions tax. The legislative history of the federal act provides an answer:

[F]rom its inception, the admissions tax was imposed *upon the general field of entertainment,* which was further subdivided for purposes of the imposition of the tax into two different categories because of the nature of the entertainment subject to the tax. On the one hand was that form of entertainment to which a direct admission charge was made upon the patrons, as is the case with theaters, skating rinks or the like, and on the other hand that form of entertainment to which no admission charge as such was made but rather the charge for admission was included in whole or in part in the price paid by the patron for refreshment, service or merchandise. "What are commonly known as cabarets" comprise this second category.

*Geer,* 88 F.Supp. at 197, quoted in *Villa Nova,* 256 Md. at 387, 260 A.2d 307. Thus, to be taxable, the refreshment price must give the patron access to the entertainment. What the 1971 amendment appeared to take away by moving the limiting language of § 402(a)(4) to § 402(a)(1) remained by virtue of the definitional paragraph of § 402(a)(4). Refreshment receipts are taxed at places where access to the entertainment is paid for through the price of refreshments.

Second, cases construing the federal counterpart to Maryland's admission and amusement tax have consistently held that refreshment receipts are subject to the tax only when the sale of refreshments is directly related to the cabaret entertainment.[6] *See, e.g., Sitnick v. U.S.,* 367 F.2d 282 (4th Cir.1966) (cabaret tax is imposed only on receipts of business during the hours when entertainment is provided),

---

6. Decisions construing the federal statute are instructive. *Mandell Re-Election Comm.,* 280 Md. at 580, 374 A.2d 1130.

*Lethert v. Culbertson's Cafe, Inc.,* 313 F.2d 506 (8th Cir. 1963) (receipts from refreshments are taxable only if supplied while cabaret entertainment is provided); *U.S. v. Eddy Bros., Inc.,* 291 F.2d 529 (8th Cir.1961) (receipts from food and beverages served and paid for before entertainment period not taxable although patrons remained for part of subsequent performance); *Erickson v. U.S.,* 228 F.Supp. 421 (N.D.Ga.1963), *aff'd,* 340 F.2d 512 (5th Cir.1965) (refreshments served after performance not subject to tax even though patrons had been present during performance). The following language from *LaJolla Casa de Manana v. Riddell,* 106 F.Supp. 132 (S.D.Ca.1952), *aff'd,* 206 F.2d 925 (9th Cir.1953), provides a unifying basis to these decisions:

> It is clear that Congress envisioned an essential unity between the service of refreshment and the enjoyment of the entertainment. The reason for this unity is the reason for the tax itself: that the payment for the refreshment should operate to entitle the patron to view the entertainment, or participate in the dancing, as the case may be.

106 F.Supp. 135.

■ Third, it is important to remember that § 402(a) is an "admissions and amusement" tax. We are called to consider the statute in the context of that purpose, *Mandel Re-Election Com'n,* 280 Md. at 579, 374 A.2d 1130, and to resist any interpretation that would extend the scope of the tax to "embrace matters not specifically pointed out," *Id.* at 580, 374 A.2d 1130, quoting *Gould v. Gould,* 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211 (1917). It is apparent that to impose this tax upon receipts from refreshments that neither include an admission in its price nor entitle the purchaser to be present during a performance would make § 402(a)(4) a sales tax.

■ Fourth, the interpretation placed upon a taxing statute by the Comptroller is entitled to "great weight" as an administrative interpretation in which the legislature acquiesced. *Palm Oil Recovery, Inc. v. Comptroller,* 266

Md. 148, 159, 291 A.2d 681 (1972). Regulation .01 (COMAR 03.01.01.01), an interpretation of § 402(a)(4) by the Comptroller reads in part:

A. The tax applies to the gross receipts of every person, firm or corporation derived from the amounts charged for:

. . . . .

(4) Admission or cover charge for seats or tables, *refreshments*, service or merchandise *at any roof garden, cabaret, nite club,* or other similar place *where there is furnished a performance or entertainment when payment of these amounts entitles the patron thereof to be present during any portion of the performance or entertainment.*

(Emphasis added). Further, testimony offered before the tax court demonstrated that in 1972 the Director of Admissions and Amusement Tax Division of the Comptroller's Office met with Burn Brae's owners and told the owners that drinks sold during intermission were not subject to the § 402(a)(4) tax. Clearly then, the Comptroller has interpreted § 402(a)(4) to require more than the mere sale of refreshments at a place where there is provided a performance. To that interpretation we must afford "great weight." *Palm Oil,* 266 Md. at 159, 291 A.2d 681.

With these four points in mind, we shall resolve the ambiguity that inheres in the language: " 'roof garden or other similar place' shall include any ... place *where ... entertainment ... [is] afforded ... patrons in connection with the serving of* food, *refreshment* or merchandise." Md.Ann.Code Art. 81, § 401(a)(4) (1980 Repl.Vol.). Receipts from the sale of refreshment are subject to taxation if sold in a roof garden or similar place, *Id.* A roof garden or similar place is any establishment where entertainment is provided and food, refreshment or merchandise is served as an integral part of the entertainment. Refreshments served spacially or temporally removed from the entertainment are not an integral part of the entertainment. Further, there must be a financial nexus between the service of

refreshments and the entertainment provided. Otherwise this "amusement" tax would become a "sales" tax. For instance, if buying refreshments entitles the patron to see the show, or if refreshment prices are inflated during performances, or if the sale of refreshments pays for the entertainment, then a connection exists between the entertainment and the serving of refreshments. Without such a connection, the tax does not apply. The Comptroller's contention that § 402(a)(4) applies whenever refreshments are served in an entertainment area affronts the rule that tax statutes are construed against the State when there is doubt as to its scope. Therefore, that contention must be rejected.

 Receipts from tickets sold at Burn Brae's door are clearly taxable pursuant to § 402(a)(1) as an admissions charge. Burn Brae concedes that point. Its *intermission refreshment receipts*, however, are not taxable pursuant to § 402(a)(4) because Burn Brae is not a roof garden or other similar place. Burn Brae is not a roof garden or other similar place because it does not sell refreshments in connection with the entertainment it provides. The purchase of refreshments does not entitle patrons to see the show; patrons pay for that privilege separately. Refreshment prices are not inflated during the show; indeed, they are not sold during the entertainment at all. Rather, they are sold only during intermission. There was no suggestion below that the sale of refreshments pays for the entertainment in any way. We deem it insignificant that refreshments are served at tables near the stage and often remain there after the show continues. In short, refreshments sold at Burn Brae's intermission are not provided in connection with the entertainment. Therefore, Burn Brae is not a roof garden or other similar place. As such, its refreshment receipts are not subject to the § 402(a)(4) tax.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.