558 A.2d 437

**MARYLAND RECREATIONAL VEHICLE DEALERS ASSOCIATION, INC.**

v.

**COMPTROLLER OF THE TREASURY.**

No. 1027, Sept. Term, 1988.

Court of Special Appeals of Maryland.

June 6, 1989.

---

John B. Jones–Bateman (Carson & Jones–Bateman, on the brief), Baltimore, for appellant.

Linda Koerber Boyd, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Deborah B. Bacharach and Gaylin Soponis, Asst. Attys. Gen., on the brief), Baltimore, for appellee.

Argued before MOYLAN, BISHOP and ROSALYN B. BELL, JJ.

MOYLAN, Judge.

Appellant, Maryland Recreational Vehicle Dealers Association, Inc. (Dealers Association) has taken this appeal from a judgment of the Circuit Court for Baltimore County affirming a decision of the Maryland Tax Court. The tax court had affirmed a Hearing Officer's denial of the Dealers Association refund claims. The sole issue before us is whether the tax court's holding, that the gross receipts from the sales of tickets to the annual Recreational Vehicle Dealers Show are subject to the Admissions and Amusement Tax set out in Md.Ann.Code Art. 81, § 402(a)(1)(i), is erroneous as a matter of law.

The facts are undisputed. The Dealers Association is a Maryland corporation whose membership consists primarily

of metropolitan Baltimore area holders of recreational vehicle dealer licenses issued by the State of Maryland. Its primary purposes are to foster the use and promote the sale of recreational vehicles, to educate the public with respect to such vehicles, and to insure that members deal fairly and equitably with the purchasing public. Appellant also serves as the industry's voice with governmental authorities.

Pursuant to these purposes, the Dealers Association holds an annual Recreational Vehicle Dealers Show. During the years relevant to this matter, the show has been held at the State Fair Grounds in Timonium, Maryland. These shows are open to the public and admission is on a ticket basis. Admission tickets are sold at the entrances to the State Fair Grounds buildings and are separated at the gate by ticket takers who return a stub portion to the patron presenting the ticket.

The show itself consists of approximately 80 individual dealers' displays of products they sell. Various types and models of recreational vehicles are exhibited, as are various accoutrements and ancillary recreational products and items. The public is invited to walk around, view, and inquire about the merchandise on display. Some vendors use a video cassette recorder and a television screen to show a continuous tape which provides information about products being sold and their operation. Patrons are encouraged to enter into contracts to purchase products represented by sample or display items.

At the show, the Dealers Association sponsors a prize, and some individual vendors sponsor drawings with prizes offered. Some vendors hand out free advertising material. At the 1986 show, the Dealers Association provided patrons with a two-page directory of exhibitors and a floor map. The show is advertised on radio and television. No music is provided, either live or canned; no circulating or fixed side shows such as jugglers or clowns are present; and no contests of skill are allowed.

Since 1949, the administrative practice of the Comptroller of the Treasury (Comptroller) has been to tax craft shows,

antique shows, boat shows, car shows and shows such as the annual Maryland Recreational Vehicle Dealers Show. During the period from February, 1983 through February, 1986, the Dealers Association paid $25,823.88 in admission and amusement taxes for the Recreational Vehicle Show. On March 10, 1986 and again on March 24, 1986 the Dealers Association filed claims for refunds of these taxes. The Retail Sales Tax Division of the Comptroller's Office denied the Dealers Association refund claims.

The Dealers Association appealed and a hearing was held before a Hearing Officer for the Retail Sales Tax Division. The Hearing Officer affirmed the denial of the refund claims. The Dealers Association then appealed to the Maryland Tax Court. The tax court affirmed the Hearing Officer's decision. The Dealers Association carried their appeal to the Circuit Court for Baltimore County. By Order of Judge William M. Nickerson, the tax court decision was affirmed. This appeal followed.

In *Comptroller v. Burn Brae Dinner Theatre*, 72 Md. App. 314, 318, 528 A.2d 546 (1987), the scope of our review was set forth:

"[J]udicial review of decisions of the Maryland Tax Court is severely limited. Maryland Code (1957, 1980 Repl.Vol., 1986 Cum.Supp.), Art. 81, § 229(*o*), provides that on appeal '[t]he circuit court shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record.' When [the Court of Appeals] reviews a Tax Court decision, the narrow scope of review set forth in § 229(*o*) is equally applicable. Like the Court of Appeals, we, too, are limited by the narrow scope of review set forth in § 229(*o* ). (Citations omitted)."

Appellant contends that the tax court's decision in interpreting Art. 81, § 402(a)(1)(i) was erroneous as a matter of law. Section 402(a)(1)(i) applies as follows:

"Except as otherwise provided in this subtitle, any county by resolution may levy a tax on the gross receipts

of every person, firm or corporation obtained from sources within the county derived from the amounts charged for:

(i) Admission to any place, whether the admission be by single ticket, season ticket or subscription, including a cover charge for seats or tables at any roof garden, cabaret or other similar place where there is furnished a performance, if payment of the amounts entitles the patron thereof to be present during any portion of the performance."

Appellant maintains that subsection (i) requires that a performance be provided in order for any admission to be taxable.

We disagree with the Dealers Association and adopt the reasoning of the Maryland Tax Court when it concluded that a performance is not required for the imposition of the admissions tax.

The tax court stated the following:

"Important to this conclusion is the analysis of the statute and its legislative history. A literal reading of Section 402(a)(1)(i) indicates that a tax is imposed on a charge for 'admission to any place.' Tax liability accrues on an admission charge whether it be by (1) single ticket; (2) season ticket; (3) subscription ticket; or (4) cover charge to a statutorily defined facility (Section 402(a)(3)) only when a performance is furnished and only if that cover charge entitles the admittee to be present during any portion of the performance. We find nothing to indicate that 'performance' refers to anything other than a particular type of admission fee, namely, the cover charge to a roof garden, etc. All other admission fees, whether to a performance or not, are taxable as long as the charge is for the permission or right to enter a place." *Scoville Services, Inc. v. Comptroller*, 269 Md. 390 [306 A.2d 534] (1972).

The statute at issue was amended in 1971 and 1972. Prior to those years, § 402 read:

"(1) *admission to any place, whether such admission be by single ticket, season ticket or subscription,* (2) admission within an enclosure in addition to the initial charge for admission to such enclosure, (3) the use of sporting or recreation facilities or equipment, and (4) admission, *cover charge for seats or tables, refreshment, service or merchandise at any roof garden, cabaret or other similar place where there is furnished a public performance when payment of such amounts entitles the patron thereof to be present during any portion of such performance.*" (Emphasis added.)

The 1971 amendment made a corrective placement of the phrase "cover charge for seats or tables ... at any roof garden, etc.," emphasized above, from § 402(a)(4) to § 402(a)(1). In addition, the word "admission" was deleted from § 402(a)(4).

The pre–1971 statute drew a distinction among four situations and taxed each similarly.

"1. The typical admission charge imposed by theaters, ball parks, skating rinks and the like;

2. A second admission charge, such as that imposed for a reserved seat once a general admission charge has been paid;

3. Charges made for the use of sporting or recreational facilities or equipment; and

4. Charges for refreshment, service or merchandise at any place where there is music, dancing or other entertainment, whether or not there is an admission or cover charge, as well as for admission, if such a charge is imposed.

*Villa Nova Night Club, Inc. v. Comptroller,* 256 Md. 381, 389 [260 A.2d 307] (1970). The first was a tax on admissions while the fourth taxed *refreshments* served when a performance was given, *as well as* for *admission* to such a place. By amending the statute as noted above, the legislature eliminated surplus language and clarified the statute so that all admissions were referred to in one

section only. The 'cover charge' language was properly placed in section one of the statute because a cover charge to a roof garden, cabaret, etc. where a performance is furnished is an admission charge.

Also, note that the pre–1971 statute, in § 402(a)(1), taxed 'admission to any place' with no performance requirement. The review of the laws amending § 402 shows no effect of the transfer of the 'cover charge' phrase on the tax on admission category.

The Petitioner contends that there exists a performance requirement in § 402(a)(1)(i) due to the placement of the comma between the first 'performance' and the 'if payment' clause. However, ... the 1971 statute, the first amended version, had no such punctuation and only in 1972 does the comma suddenly appear. We agree with the Comptroller that this was 'simply an inadvertent addition or an attempt by a bill drafter to add appropriate punctuation' and that the 'if payment' clause modifies only those admissions receipts in the form of a cover charge to a roof garden, cabaret or other similar place. Further credence to this interpretation is that the reference to 'the performance' in the 'if payment' clause can only, logically and grammatically, refer back to the 'a performance' language in the 'cover charge' phrase in the statute."

Additional support for the tax court's holding can be found in 1936 Md.Laws, ch. 10, § 3. That section was the first to add a "Tax on Admissions" to the Maryland statutory landscape. It provided, in pertinent part, a tax upon the gross receipts from:

> "the sale of admission tickets, cash admissions, charges or fees to any show, athletic event, contest, game, theatre, moving picture parlor, opera, race track, skating rink or other place of amusement, including admission by season ticket or subscription."

The new law further provided:

> "An equivalent tax shall likewise be levied and collected upon the gross receipts from any admission or cover

charge for seats and tables, reserved or otherwise, at any restaurant, hotel, cafe, night club, cabaret, roof garden or similar place furnishing a floor show or similar entertainment. In cases where there is no charge for admission or cover charge to such place of entertainment, furnishing a floor show or similar entertainment, but a charge for admission is wholly or in part included in the price paid for refreshments, service or merchandise, an equivalent tax shall be levied...."

Thus, from the outset of the admissions tax, through its evolution, and to its present form it has always maintained the distinction between an admission and an admission to a cabaret, roof garden or other similar place where a performance is given.

The Dealers Association argues that the cases of *Comptroller v. Mandel Re–Election Comm.*, 280 Md. 575, 374 A.2d 1130 (1977), *Comptroller v. Citizens for Hoyer*, 51 Md.App. 33, 440 A.2d 429 (1982), and *Comptroller v. Burn Brae Dinner Theatre*, 72 Md.App. 314, 528 A.2d 546 (1987), render the circuit court's holding erroneous as a matter of law.

*Mandel* and *Hoyer* concerned the application of the admissions and amusement tax to the sale of tickets to a political fundraiser. In both cases, it was held that background music played at the fundraiser was not the furnishing of a performance within the contemplation of Art. 81, § 402(a)(1)(i) and thus the fundraiser was not a taxable event. *Mandel* and *Hoyer* do not, however, stand for the proposition propounded by appellant that for an admission to be taxable under § 402(a)(1)(i) there must be a performance given to which the admission entitles the patron to be present. As noted earlier, the requirement of a performance is limited to the situation where there is a cover charge at a cabaret, roof garden, or other similar place.

The language of § 402(a)(1)(i) which appellant relies upon for support, was meant to prevent the circumvention of the admissions tax by "establishments which, while offering entertainment did not charge an admission fee but rather

derived their revenue from the sale of food and drink."
*Villa Nova Night Club, Inc. v. Comptroller*, 256 Md. 381,
387, 260 A.2d 307 (1970), quoting *Jones v. Fox*, 162 F.Supp.
449 (D.Md.1958). *See also Comptroller v. Mandel Re-
Election Comm.*, 280 Md. 575, 580–582, 374 A.2d 1130
(1977).[1] These establishments undoubtedly recouped their
lost admission revenues through the imposition of cover
charges. This, however, is not the situation presented on
this appeal.

The third case appellant cites, *Comptroller v. Burn Brae
Dinner Theatre*, 72 Md.App. 314, 528 A.2d 546 (1987), is
equally inapposite. *Burn Brae* asked the question "wheth-
er receipts derived from the sale of refreshments during
intermission at a dinner theatre are subject to an admis-
sions and amusement tax." 72 Md.App. at 316, 528 A.2d
546. The Burn Brae Dinner Theatre charged admission for
the privilege to enter the theatre and enjoy a dinner and a
performance of a Broadway play. Burn Brae paid an
amusement tax on receipts garnered from tickets sold at
the door. This Court held that the refreshments sold at
intermission were not taxable under § 402(a) because, "to
be taxable, the refreshment price must give the patron
access to the entertainment." *Burn Brae*, 72 Md.App. at
326, 528 A.2d 546. Thus, we added that Burn Brae is not a
roof garden or other similar place because the purchase of
refreshments does not entitle the patrons to see the show.
The show was a separate privilege with a separate admis-
sion fee.

Appellant's reliance on *Burn Brae* is misplaced. The
decision in *Burn Brae*, like those in *Mandel* and *Hoyer*, did
not discuss the distinction between an admission to any
place and a cover charge for seats and tables at a roof

---

1. For a discussion of the federal admissions tax, see § 500 of the
Internal Revenue Act of 1927, as amended, 26 U.S.C. § 500 and *Geer v.
Birmingham*, 88 F.Supp. 189 (D.Iowa), *rev'd* 185 F.2d 82 (8th Cir.
1950). For a discussion of the federal cabaret tax, see § 1700(e)(1) of
the Internal Revenue Code of 1939, as amended, 26 U.S.C.
§ 1700(e)(1), *Jones v. Fox, supra,* and *Geer v. Birmingham, supra.*

garden or cabaret where there is furnished a performance. This distinction makes all the difference in this case.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.