LANE CONSTRUCTION CORPORATION *v.* COMP-
TROLLER OF THE TREASURY

[No. 188, September Term, 1961.]

*Decided March 16, 1962.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Marbury, JJ.

*E. Dale Adkins, Jr.,* and *Raymond S. Smethurst, Jr.,* with whom were *Adkins, Potts & Laws* on the brief, for the appellant.

*William J. McCarthy, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Edward F. Engelbert, Chief, Retail Sales Tax Division,* on the brief, for the appellee.

Hammond, J., delivered the opinion of the Court.

This appeal presents for decision the constitutionality of the Maryland use tax, imposed by Code (1957), Art. 81, Secs. 372-393 (as amended by Code (1961 Supp.)). In 1959 Lane

Construction Corporation, the appellant, brought into this State to use in construction work at Andrews Air Force Base various pieces of heavy equipment, most of which had been purchased outside Maryland and used for some time on jobs in other states. The comptroller assessed on this latter equipment a use tax measured by the purchase price of each item of equipment less an allowance of 10% of the price a year for each full year after its purchase (as provided by Sec. 373 (e) of Art. 81 of the Code (1961 Supp.)) and an allowance for excise taxes on the item paid another state (as required by Sec. 375 (c) of Art. 81 of the Code (1961 Supp.)).

Claiming that the value placed on the property by the comptroller under the statutory formula greatly exceeded its fair market value and that, therefore, the tax imposed on it exceeded the sales tax a purchaser in Maryland of similar equipment would pay (since the in-state purchaser would be taxed on the purchase price, which Lane equates to fair market value), Lane protested to the comptroller that the use tax imposed an unconstitutional burden on interstate commerce and violated the equal protection provision of the Constitution of the United States. After a formal hearing the assessment was affirmed by the comptroller, and then by the Circuit Court. Lane appeals to this Court from the order of the Circuit Court for Prince George's County.

Maryland first enacted a retail sales and use tax in 1947. *Comp. of Treas. v. Thompson Trailer Corp.,* 209 Md. 490, and *Comptroller v. Julian,* 215 Md. 406, held that the use tax statutes as they then read showed a clear legislative intent to tax the use, storage or consumption of property in Maryland only if the property had been purchased with the specific intent to use, store or consume it here. By Ch. 332 of the Acts of 1955, the statute was amended to make use tax liability depend on actual use, storage or consumption in Maryland, rather than on purchase with intent to use, store or consume in the state. Thus, goods were taxed on their purchase price no matter how long after the purchase they were first used, stored or consumed in Maryland. In 1958, in order to soften the impact of the use tax in situations where goods first be-

came taxable in Maryland after long use elsewhere, the legislature by Ch. 91 of the Acts of 1958 (now Code (1961 Supp.), Art. 81, Sec. 373 (e)) provided that in computing the assessable basis, 10% of the purchase price be deducted for each full year of use outside the state. The same year the sales and use taxes were both raised from 2% to 3% on each sale where the price is in excess of one dollar.

Lane concedes that the use tax was a valid compensating tax complementary to the sales tax before its amendment in 1955,[1] but contends that by eliminating the requirement of intent to use the purchased goods in Maryland the legislature "disturbed the traditional purpose of the tax" and changed its concept from a tax complementary to the sales tax to an independent revenue tax which does not afford equal treatment to in-state and out-of-state purchases and is not, therefore, entitled to the judicial approval accorded the traditional and customary use tax.[2]

We do not agree. The general plan and purpose of the use tax remains as it was before the 1955 amendment. The change was made then to insure accomplishment of its purpose, to subject property brought into the state after it had been first used elsewhere to the same tax its purchaser would have borne if it had been bought in the state, and the obvious effort of the 1958 amendment was to make the taxable measure of a used article brought into Maryland the approximate equivalent of its taxable measure if it had been bought in the State at the time it was imported—that is, its purchase price. In the words of Mr. Justice Cardozo, in approving for the Supreme Court

1. One of the purposes of the use tax was "to remove the temptation of buyers to place their orders in other States in the effort to escape payment of the tax on local sales." Miller Bros. Co. v. State, 201 Md. 535, 546. Another was to avoid "unfair discrimination * * * between purchasers in Maryland and purchasers outside Maryland for use in Maryland." Compt. of Treasury v. Crofton Co., 198 Md. 398, 400.

2. Approval was given to the use tax in the face of claims of Federal unconstitutionality in Pacific Tel. Co. v. Gallagher, 306 U. S. 182, 83 L. ed. 595; Southern Pac. Co. v. Gallagher, 306 U. S. 167, 83 L. ed. 586; Henneford v. Silas Mason Co., 300 U. S. 577, 81 L. ed. 814.

the use tax of the State of Washington in *Henneford v. Silas Mason Co.,* 300 U. S. 577, 584, 81 L. ed. 814, the present purpose and design of the Maryland use tax is, as it has been since its enactment, to make sure that "when the account is made up, the stranger from afar is subject to no greater burdens as a consequence of ownership than the dweller within the gates." He said also what we think is true here: "Equality is the theme that runs through all the sections of the statute." *Id.* at 583.

Lane sought to show that the 10% yearly allowance was inadequate and caused its property to be valued at substantially more than its fair market value, by the testimony of two witnesses as to that value.

It would seem that Maryland could have validly continued to measure the use tax by the purchase price without any allowance for depreciation. To quote Mr. Justice Cardozo again: "A taxing act is not invalid because its exemptions are more generous than the state would have been free to make them by exerting the full measure of her power." *Id.* at 587. The sales tax is an excise on the privilege of selling specified property at retail, with the tax paid by the purchaser. The measure of the tax is the purchase price. What the purchaser does thereafter with the property has no effect on or relation to the tax exacted—whether he uses it in Maryland or elsewhere, or how long he uses it in Maryland or elsewhere, are of no matter. The use tax is an excise on the privilege of using, storing or consuming specified property in Maryland. The measure of the tax is the purchase price. It is immaterial to the amount of the tax how long the owner uses or stores the property in the state—that he does so is enough. Whether he exercises any of the attributes of ownership which Maryland taxes if done within its borders just after purchase or years later, presumably his doing so will be equally useful and valuable to him. Thus, in the instant case, Lane undoubtedly benefitted from the contributions the aged but serviceable machinery made to its construction efforts substantially as much as it would have from the contributions of new equipment.

Lane's testimony seeking to show market value had definite

infirmities. It was stipulated that the total purchase price of the equipment was $2,119,408; and it was shown that the comptroller's appraisal under the statutory formula was $1,434,914 and that Lane's estimate of its market value was $768,030. An executive of a firm which sells heavy equipment appraised some two-thirds of the equipment after physical inspection, as of the time of his inspection. When the inspections were made some items had been in Maryland almost a year, and all the others for from six to nine months. The witness said frankly that it would be very difficult to estimate the value of the machinery as long as six months prior to the time of his examination, and did not, in fact, make such an estimate. His appraisal, as of the times of his examinations, was $412,580. The book value on Lane's books was $410,554. It appeared from the testimony of Lane's vice-president that book value figures are not realistic and that Lane did not use the straight line method of depreciation alone, where an equal percentage of cost is deducted each year, but rather used the so-called double declining method in conjunction with the straight line method. Under Lane's method, for example, a machine with an estimated life of five years would be depreciated 40% in the first year and this 40% deducted from the cost before another 40% of the remainder is deducted the second year, and so on for three years—until straight line depreciation is applied to the then resulting balance. It is apparent that if only straight line depreciation were used by Lane, the book value would be materially increased. It would appear also that both the independent appraiser and Lane's official (despite his disclaimer), to a significant extent, geared their estimates of value to depreciated book values. A $10,000 item with a useful life of five years, depreciated for two years by the straight line method at 20% a year, would have a remaining value of $6,000. The same item, depreciated as Lane does it by the double declining method, for two years would have a remaining value of $3,600 ($10,000 less $6,400—which is $4,000 plus 40% of $6,000, or $2,400).

Lane's vice-president did not inspect the equipment when it came into Maryland but put values on it from company records and his recollection of its condition.

If we proceed on the premise that Lane showed that fair market value of the equipment subject to use tax was less than the figure produced by the statutory formula, we do not think it has met the necessary burden of showing that the tax is invalid.

The Supreme Court, in viewing the practical operation of use taxes attacked as in violation of the commerce clause, has looked to see if substantial discrimination against "foreigners" in plan or effect was present. *Pacific Tel. Co. v. Gallagher,* 306 U. S. 182, 83 L. ed. 595; *Southern Pac. Co. v. Gallagher,* 306 U. S. 167, 83 L. ed. 586; *Henneford v. Silas Mason Co., supra; Gregg Dyeing Co. v. Query,* 286 U. S. 472, 76 L. ed. 1232; *Gen. Amer. Tank Car Corp. v. Day,* 270 U. S. 367, 70 L. ed. 635; see *Hartman, State Taxation of Interstate Commerce,* p. 163 *et seq.* The Court has not required that mathematical equality be given to out-of-state taxpayers or products, as long as such equality was reasonably attempted and somewhat closely achieved. Thus, in the *Gen. Amer. Tank Car* case, the Louisiana tax there assailed was not struck down even though a disparity may have existed between the rate the out-of-state firm was charged and the rate an in-state firm would have had to pay, the former being subject to 25 mills per dollar of assessed value and the latter allegedly being subject only to an average of 21 mills per dollar of assessed value. Compare *Don McCullagh, Inc. v. State,* 93 N. W. 2d 252 (Mich.), app. dismissed for lack of a substantial federal question 359 U. S. 343, where the Supreme Court of Michigan upheld a sales tax imposed on a car retailer which sold cars to a firm for leasing by that firm in Florida, even though no sales tax would have been imposed on the sale had the vendee leased the cars in-state.

We cannot accept Lane's argument that there is an unconstitutional discrimination because one buying in Maryland a used tractor, for example, would pay a sales tax on the purchase price and one bringing into the state a used tractor of the same make and age would pay a use tax greater in amount by reason of the statutory formula producing a higher valuation. There is no discrimination against non-residents. A Maryland contractor who buys a piece of equipment in or out-

side Maryland pays the same tax as would a non-resident in similar circumstances. The fact that, in a given instance, the tax produced by the statutory formula of the value of an item imported, and the amount at which a comparable item could then be bought secondhand in Maryland—if one were available — do not coincide precisely, does not of itself make the tax unconstitutional.

This has been made apparent by the cases in the Supreme Court dealing with the equal protection clause. It has been held not to impose on the states the requirement of absolute mathematical equality in regard to taxation. Rather, it permits great "flexibility and variety that are appropriate to reasonable schemes of state taxation" as long as a classification is not *per se* or in practical operation palpably arbitrary. *Allied Stores of Ohio, Inc. v. Bowers,* 358 U. S. 522, 526, 3 L. ed. 2d 480. "[T]he presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive demonstration against particular persons and classes." *Madden v. Kentucky,* 309 U. S. 83, 88, 84 L. ed. 590. If on any imaginable factual basis, the state legislature had a reason to distinguish between certain transactions, and thus to tax them somewhat differently, the classification will be upheld. *Allied American Co. v. Comm'r,* 219 Md. 607, 623.

Maryland, before the 1955 amendment of the use tax statute, had failed to realize income on transactions it desired and had attempted to tax, because of the inability to show a specific intent to use the property in Maryland. In order to remedy this situation, the General Assembly adopted the 1955 amendment and finally the 1958 10% flat depreciation credit, which, in its wisdom, it must have considered a close approximation to the average depreciation of goods coming into this state. The Assembly must also have considered the administrative simplicity and certainty of the deduction, something that many taxpayers would prefer the taxing authorities consider more often.

Under these circumstances, we are unable to find the credit an arbitrary or unreasonable method of attaining the legislative goal. Compare *Madden v. Kentucky, supra,* where the Su-

preme Court held a Kentucky statute taxing out-of-state bank deposits at five times the rate imposed on in-state deposits, did not violate the requirements of equal protection, or those of due process (with which equal protection is completely entwined in this area), for, among other reasons, the fact that enforcement of the payment of taxes on the out-of-state deposits was more difficult than enforcement of the payment of taxes on the in-state deposits. Also compare *Mutual Tobacco Co. v. Halpin,* 111 N. E. 2d 155 (Ill.), where a tax of 1½ mills per cigarette imposed on economy, standard and luxury brands alike (the tax varying from $95 to $184 per $1,000 worth of cigarettes and increasing percentage-wise as the price of the cigarettes decreased), was upheld against the claim of unconstitutionality. See also *Ohio Oil Co. v. Conway,* 281 U. S. 146, 74 L. ed. 775; *Jennings v. Coal Ridge Co.,* 147 U. S. 147, 37 L. ed. 116; *Bell's Gap RR. Co. v. Pennsylvania,* 134 U. S. 232, 33 L. ed. 892; *Celanese Corp. v. Davis,* 186 Md. 463; *State v. Shapiro,* 131 Md. 168.

*Judgment affirmed, with costs.*