## HOOKS ET AL. *v.* COMPTROLLER OF THE TREASURY OF THE STATE OF MARYLAND

[No. 299, September Term, 1971.]

*Decided April 13, 1972.*

The cause was argued before HAMMOND, C. J., and FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Archie D. Williams* for appellants.

*William J. Rubin, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

Edward W. Hooks, who leases a taxicab on a daily basis from Checker Cab Association (Checker), an association of about 86 owners, who own some 277 cabs, here seeks to recover the sales tax which was added to the rent which he and other drivers similarly situated paid. Under the rental agreement with Checker, Hooks and his colleagues paid a fixed but unspecified amount for the use of the taxicab for a 12-hour period, whether or not they operated the taxicab for the entire time, and in addition, agreed to purchase from Checker all of the gasoline consumed during the period, at a price in excess of the market price.

It seems to be conceded that Checker derived its income exclusively from the amount it charged for gaso-

line.[1] In return for this, Checker provided various services, including dispatching of taxicabs and towing. The fixed rental fee which Checker collected was remitted without deduction to the owner of the leased cab. A sales tax was collected by Checker from lessee-drivers in accordance with the provisions of the Retail Sales Tax Act (the Act), Code (1957, 1969 Repl. Vol.) Art. 81, §§ 324-371, on the fixed amount paid as rent as well as on the amount paid for gasoline. In Hooks' case, this was $351.31 for the period not barred by limitations.

Mr. Hooks looked at all this with a jaundiced eye, and in an effort to right what he conceived to be a wrong, filed with the Comptroller a claim for refund of sales taxes paid by him and by other lessees who drove for Checker, in an aggregate amount of $141,036.38. The Comptroller's hearing officer ruled that the only claim which could be considered was for a refund of sales tax actually paid by Hooks himself, and denied this claim.

Hooks appealed to the Maryland Tax Court, which affirmed the decision of the Comptroller, and then to the Baltimore City Court, which affirmed the tax court. From a judgment absolute entered by the Baltimore City Court in favor of the Comptroller, Hooks has brought this appeal.

Hooks advances four reasons why the judgment entered below should be reversed:

> (i) An application for refund of sales taxes erroneously, illegally or unconstitutionally paid may be made by a claimant in a representative capacity;
>
> (ii) The lease of a taxicab by an owner to a driver for the purpose of rendering service to the public is a sale of transportation service, exempt from sales tax under § 326 (n) of the Act;
>
> (iii) Gasoline purchased from the agent of the

---

1. This amount was fixed by adding an undisclosed increment to the price which Checker paid a wholesaler.

lessor of a taxicab by a lessee is exempt from sales tax by virtue of § 326(d) of the Act, and

(iv) The imposition of a sales tax on a lessee who drives a taxicab when a similar tax is not imposed on an owner who drives his own taxicab, is a denial of equal protection guaranteed by the 14th Amendment to the United States Constitution.

We shall consider these contentions in order.

### (i)

Hooks' first contention, that he was entitled to bring a class action, may be readily disposed of. It is quite clear that § 348 of the Act, which deals with applications for refund of sales taxes erroneously, illegally or unconstitutionally paid is quite specific and provides, in part:

"* * * Such application may be made *by the person upon whom the tax was imposed* or by any vendor who collected and paid such tax to the Comptroller if the vendor establishes to the satisfaction of the Comptroller, under such regulations as he may prescribe, that the tax was paid on a sale which had been rescinded or cancelled or was erroneously, illegally or unconstitutionally collected. * * *" (Emphasis supplied)

It would seem patently clear that applications for refund may be made only by the taxpayer who paid the tax or by a vendor who has collected the tax from others. Here, it was the taxpayer, Hooks, who made the claim, and while he may act in his own behalf, there is no warrant in the Act permitting him to advance a claim in behalf of others similarly situated.

The right of appeal to the Maryland Tax Court provided for by § 352 of the Act is accorded "any taxpayer" and "taxpayer," as defined by § 324(q) "* * * means any person required * * * to pay or pay over to the Comptroller the tax imposed * * *." While the defini-

tion of "person" appearing in § 324(a) encompasses a person acting in a fiduciary or representative capacity, or a "group * * * of individuals acting as a unit," the definition must be read in the context of § 348, which provides that application must be made by the person who paid the tax. Additionally, it is quite clear that Maryland Rule 209, dealing with class actions, on which Hooks relies, while made applicable to the courts of the State by Rule 1, is not applicable to either the Comptroller or the Maryland Tax Court under Rule 5 i.

### (ii)

The Act, § 326(n), exempts from the retail sales tax:

> "*Transportation services and newspapers.*— Sales of transportation services, and the printing and sales of newspapers of any and all types."

Hooks can derive little comfort from this, however, since the exemption only relieves his passengers, who are the purchasers of transportation services, from paying a tax on the fares which they pay. The exemption in no way relates to the rent which he pays for the taxicab which he leases, nor can it be successfully argued that the taxicab which he leases is leased again to his passengers. Hooks is the ultimate consumer, because he does not lease the taxicab for the purpose of leasing it again in an unchanged form, *Comptroller of the Treasury v. American Cyanamid Co.*, 240 Md. 491, 498, 214 A. 2d 596 (1965); *see Hotels Statler Co. v. District of Columbia*, 199 F. 2d 172 (D. C. Cir. 1952); *Atlanta Americana Motor Hotel Corp. v. Undercofler*, 222 Ga. 295, 149 S.E.2d 691 (1966); *Boise Bowling Center v. State*, 93 Idaho 367, 461 P. 2d 262 (1969).

The crux of the matter is found in the definition of "sale" contained in § 324(d) of the Act:

> " '*Sale*' and '*selling*' mean any transaction whereby title or possession, or both, of tangible personal property is or is to be transferred by

any means whatsoever for a consideration including rental, lease or license to use, or royalty, by a vendor to a purchaser, or any transaction whereby services subject to tax under § 325 of this subtitle are rendered for consideration to any purchaser by any vendor. * * *"

It has long been settled that the sales tax reaches rentals of tangible personal property, *Canton Co. v. Comptroller of the Treasury*, 231 Md. 294, 190 A. 2d 92, *appeal dismissed*, 375 U. S. 58, 84 S. Ct. 173, 11 L.Ed.2d 122 (1963) ; *Comptroller of the Treasury v. Pittsburgh-Des Moines Steel Co.*, 231 Md. 132, 189 A. 2d 107, *cert. denied*, 375 U. S. 821, 84 S. Ct. 58, 11 L.Ed.2d 55 (1963).

### (iii)

It is true, as Hooks contends, that § 326 (d) of the Act exempts:

*"Motor vehicle or liquid fuel.*—Sales of motor vehicle fuel and liquid fuel upon the receipt, use, distribution or sale of which in this State a tax is imposed by the law of this State."

The difficulty here is that this is not a sale of gasoline by Checker to Hooks in the ordinary sense. Paragraph 6 of Hooks' lease agreement provided:

"Lessee [Hooks] will pay to the Lessor [the owner of the taxicab], a fixed rental agreed upon between the parties for the operation of the taxicab for each shift, and a specified sum per gallon for all gasoline consumed on each shift.
"Lessor agrees that all of his receipts for each leased period, in excess of those charges agreed upon for the fixed rental and the cost per gallon of gasoline and applicable taxes shall be retained by the Lessee and belong to him."

Judge Cullen, when called upon to consider the same lease agreement in *Checker Cab Association, Inc. v.*

*Comptroller of the Treasury* (Baltimore City Court, Docket 20 P, Folio 18, decided 4 November 1965), observed:

"Normally speaking sales of motor vehicle fuel are exempt from sales tax by virtue of section 326 (d) of Article 81. Disregarding the second paragraph of section 6 of the leasing agreement, it appears that the consideration passing for the rental of the taxicab is 'a fixed rental agreed upon between the parties for the operation of the taxicab for each shift, and a specified sum per gallon for all gasoline consumed on each shift.' Taken alone this could very well be interpreted as meaning that the lessee of the motor vehicle was to pay a charge that was to be agreed upon between the parties plus a certain amount of money per gallon of gasoline *consumed.* Looking at this section alone and assuming that it was not necessary for the lessee to purchase the gasoline from the lessor, there would clearly be no relationship between the sale of the gasoline and the rental which includes a certain, but unfixed, amount of money per gallon *consumed* which might merely relate to the amount of mileage and consequent wear and tear on the motor vehicle. The second paragraph of the same section does not specifically require the purchase by the lessee of the gasoline from the lessor. The reference is merely to the cost per gallon of gasoline which may refer to the 'specified sum per gallon' set forth in the first paragraph of the same section or might refer to the actual cost of the gasoline to the lessee. The latter interpretation is not consistent with the first paragraph of the section and there is no provision in the agreement providing that the lessee shall purchase all gasoline used from the lessor although it is clear from

Paragraph 7 of the Agreement that the lessor may require the lessee to purchase the gasoline from whomsoever and wheresoever the lessor may elect. This may have been the intent of the parties, but it is not spelled out in the agreement. (Emphasis in original)

"Assuming, however, without deciding, that it is the intent of the parties that all of the gasoline shall be purchased from the lessor, the purchase of the gasoline is part of the consideration for the rental of the vehicle. It therefore becomes part of the 'price' as defined in Section 324(i) of Article 81 and as such, appears to be taxable for the purposes of the act."

This conclusion appears wholly consistent with the definition of the "price" on which the tax is imposed, which appears in § 324(i) of the Act:

" *'Price'* means the aggregate value in money of any thing or things paid or delivered, or promised to be paid or delivered by a purchaser to a vendor in the consummation and complete performance of a retail sale without any deduction therefrom on account of the cost of the property sold, cost of materials used, labor or service cost, or any other expense whatsoever. * * *"

If any further evidence is needed that it was the intention of the Legislature at the time of the passage of the Act to include the amount paid for gasoline in taxicab rental charges as part of the price subject to sales tax, it may be found in House Bill 775, introduced at the 1965 Session of the General Assembly, which would have added a new subparagraph (y) to § 326 of the Act, and would have exempted:

"Rental and *other consideration* paid by the operator of a taxicab for the use thereof." (Emphasis supplied)

Although House Bill 775 was passed by the House of Delegates and the Senate, it was vetoed by the Governor on 4 May 1965.

### (iv)

Finally, Hooks mounts an attack on the result reached below on the ground that it is a denial of equal protection, violative of rights guaranteed by the 14th Amendment to the Constitution of the United States, relying on *Chickasha Cotton Oil Co. v. Cotton County Gin Co.,* 40 F. 2d 846 (10th Cir. 1930). In a nutshell, his argument is that lessee-drivers of taxicabs must pay a sales tax on the amounts which they pay under the lease agreement with Checker, while owner-drivers pay no sales tax whatsoever.[2]

The equal protection clause does not require absolute mathematical equality in regard to state taxation; "[r]ather, it permits great 'flexibility and variety that are appropriate to reasonable schemes of state taxation' as long as the classification is not *per se* or in practical operation palpably arbitrary," *Lane Corp. v. Comptroller,* 228 Md. 90, 97, 178 A. 2d 904 (1962) [citing *Allied Stores of Ohio, Inc. v. Bowers,* 358 U. S. 522, 526, 79 S. Ct. 437, 3 L.Ed.2d 480 (1959)]. It has long been recognized that taxation is a practical affair, *Frank J. Klein v. Comptroller,* 233 Md. 490, 494, 197 A. 2d 243 (1964), and that "only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes" can the presumption of constitutionality be rebutted, *Madden v. Kentucky,* 309 U. S. 83, 88, 60 S. Ct. 406, 84 L. Ed. 590 (1940). By its terms the Act does no more than impose a tax on the privilege of transferring certain property or providing certain services for a consideration at retail. The fact that in a particular instance the effect of the tax im-

---

2. While the record is not entirely clear on this point, it may be that owner-drivers are required to purchase gasoline at a price in excess of the market price. The question whether this sale may be subject to sales tax is not before us.

posed may be to treat certain transactions or taxpayers differently, absent a showing that it is without any reasonable basis and is entirely arbitrary, does not amount to such a discriminatory classification as to be violative of constitutional guarantees, *Villa Nova v. Comptroller,* 256 Md. 381, 391, 260 A. 2d 307 (1970).

The short answer to Hooks' contention is that the Act, § 325, imposes a tax on the "privilege of selling certain tangible personal property at retail" and § 324(d) includes, in the definition of a sale, the transfer of possession of such property by rental, lease or license to use. The fact that the effect of the Act in taxing "transaction[s] * * * whereby * * * possession * * * of tangible personal property is * * * transferred" under § 324 (d) results in different treatment being accorded lessee-drivers, who operate under a lease, and owner-drivers, who do not, is in no way indicative of a wholly unreasonable or impermissible classification. It may well be that a different result would have obtained if a privilege or license tax had been explicitly imposed on drivers who did not drive their own taxicabs and not on drivers who did, *see Fair Lanes, Inc. v. Comptroller,* 265 Md. 361, 289 A. 2d 585 (1972) and 16 Am.Jur.2d *Constitutional Law* §§ 498-505, particularly § 502, at 878 (1964).

*Chickasha,* on which Hooks relies, is clearly distinguishable. There, the statute purported to subject all cotton gins to classification and licensing requirements as public utilities, but exempted persons and corporations engaged in ginning cotton owned by the individuals who owned the cotton gin or by stockholders of the corporation which owned it. The distinction is that which we recognized in *Villa Nova v. Comptroller, supra,* 256 Md. at 391:

> "The point is that the Legislature, when it passes a revenue measure, has the power to classify, and may impose varying tax burdens on different groups. It is only when the attempted classification has no reasonable basis

in the nature of the businesses classified and burdens are imposed unequally on taxpayers between whom there is no real difference that the courts will interfere."

In *Chickasha* there was no reasonable distinction between the business which was regulated and that which was exempt.

Since we find no merit in Mr. Hooks' contentions, we conclude that the judgment entered below should be affirmed.

*Judgment affirmed, costs to be paid by appellant Hooks.*