2001 SD 108

**CITY OF SIOUX FALLS, a municipality chartered under the Constitution of the State of South Dakota, Plaintiff and Appellant,**

v.

**Douglas L. JOHNSON and Sherry D. Johnson, Defendants and Appellees.**

**No. 21548.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 2001.

Decided Aug. 15, 2001.

---

R. Shawn Tornow, Sioux Falls City Attorney's Office, Sioux Falls, SD, Attorneys for plaintiff and appellant.

Mark V. Meierhenry of Danforth, Meierhenry & Meierhenry, Sioux Falls, SD, Attorneys for defendants and appellees.

ECKRICH, Circuit Judge.

[¶ 1.] City of Sioux Falls (City) appealed an award of prejudgment interest, attorney's fees and expert witness fees. We reverse and remand.

## FACTS

[¶ 2.] This appeal arises from a protracted condemnation action. On September 27, 1995, City initiated an action to condemn property owned by Doug and Sherry Johnson (Johnsons). City needed Johnsons' land for a public right-of-way and a storm water drainage project. The real property included a house, garage, barn, and 9.70 acres.[1]

[¶ 3.] City, by resolution adopted August 7, 1995, decided to "expeditiously" proceed to acquire real estate by eminent domain proceedings. City commenced its suit pursuant to SDCL ch 21–35. City subsequently availed itself of the so-called "quick-take" procedures described in SDCL 31–19–23 *et seq.* On October 25, 1995, City deposited $423,000 with the clerk of courts pursuant to SDCL §§ 31–19–26 and 31–19–28. On November 3, 1995, Johnsons acquiesced to the quick-take proceeding by waiving a hearing to contest City's necessity to take their property. *See* SDCL 31–19–10.1. On November 7, 1995, Johnsons received the funds deposited by City pursuant to SDCL 31–19–29 and by order of the trial court.

[¶ 4.] Johnsons remained in possession of the property. City obtained an order of possession on July 12, 1996 that gave it the right to exclusive possession on and after August 12, 1996. City thereafter took exclusive possession of the property.

[¶ 5.] On September 20, 1996, City deposited an additional $124,955.98 with the clerk of courts to pay additional compensation due Johnsons, to be determined by jury verdict and judgment thereon or settlement of the matter. This deposit, unlike the prior deposit, made no reference to any statute. Johnsons received this deposit September 15, 1997 pursuant to SDCL 31–19–29. On January 31, 1997, City amended its condemnation petition, in accord with the provisions of SDCL 21–35–28, to add other defendants as record holders of interest.

[¶ 6.] The first trial, held August 15, 1997, resulted in a jury award of $1.2 million. This Court reversed and remanded for new trial, holding that the trial court abused its discretion in denying City's motion for a new trial. *Johnson I*, 1999 SD 16 at ¶¶ 8–30, 588 N.W.2d at 908–11. On January 26, 2000, following retrial, the jury returned a verdict of $1.1 million. This sum was more than 20 percent above the City's offer, thus entitling the Johnsons to costs pursuant to SDCL 21–35–23. A partial judgment for $552,044.52 was entered February 2, 2000.

[¶ 7.] The trial court subsequently awarded:

---

1. For a more complete description of the facts *see City of Sioux Falls v. Johnson*, 1999 SD 16, 588 N.W.2d 904 (hereinafter referred to as *Johnson I*).

a) Prejudgment interest at 10% from November 3, 1995 to January 28, 2000, totaling $256,493.02.

b) Expert witness fees of $4650.00 for appraiser Deane Davenport ($2,000.00 for trial; $2650.00 for initial report).[2]

c) Attorney fees of $175,000.00 plus sales tax.

## STANDARD OF REVIEW

[¶ 8.] The question regarding the proper rate of prejudgment interest involves reconciliation between statutes and as such, is reviewed under the de novo standard. *Welsh v. Centerville Twp.*, 1999 SD 73, ¶ 7, 595 N.W.2d 622, 624. Awards of fees are reviewed under an abuse of discretion standard. *Eccleston v. State Farm Mutual Auto. Ins. Co.*, 1998 SD 116, ¶ 20, 587 N.W.2d 580, 583; *Boland v. City of Rapid City*, 315 N.W.2d 496, 503 n. 4 (S.D. 1982).

## DECISION

[¶ 9.] The Fifth Amendment to the Federal Constitution and articles VI, § 13 and XVII, § 18 of the South Dakota Constitution prohibit the taking of private property for public use without paying just compensation.[3] The question as to what is just compensation for private property taken for public use is a judicial, and not a legislative, question. *Monongahela Navigation Co. v. United States*, 148 U.S. 312, 327, 13 S.Ct. 622, 626, 37 L.Ed. 463, 468 (1893). Nevertheless, the legislature establishes the procedure to determine just compensation.

[¶ 10.] "Takings" cases are not exclusively condemnation cases. One should recognize that the term "condemnation" generically describes a variety of procedures by which a sovereign exercises its power of eminent domain or takes private property.[4] Two such procedures established by the legislature are: 1) a municipality's power to take by non-quick-take eminent domain proceedings in which the necessity to take and the value of the property taken are determined, SDCL ch 21–35; and 2) quick-take proceeding as applicable to municipalities described both in SDCL 21–35–9 and SDCL 31–19–23 *et*

2. Defendant's expert appraiser, Deane Davenport was listed as a defense witness for trial. Davenport testified in *Johnson I.* He did not testify in the second *Johnson* trial on remand from this Court, but City introduced various aspects of his opinion by examination of another appraiser.

3. The Fifth Amendment to the United States Constitution provides, in pertinent part, "nor shall private property be taken for public use without just compensation." Article VI, § 13 of the South Dakota Constitution provides that: "[p]rivate property shall not be taken for public use, or damaged, without just compensation, which will be determined according to legal procedure established by the Legislature[.]" Article XVII, § 18 of the state constitution provides that:

[m]unicipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed, by the construction or enlargement of their works, highways or improvements, which compensation shall be paid or secured before such taking, injury or destruction. The Legislature is hereby prohibited from depriving any person of an appeal from any preliminary assessment of damages against any such corporation or individuals made by viewers or otherwise; and the amount of such damages in all cases of appeal shall, on the demand of either party, be determined by a jury as in other civil cases.

4. "It seems to be of no consequence as to the form of action brought, whether it be ejectment, injunction or damages, the courts treat them as being actions for compensation under the constitution." Hurley v. State, 81 S.D. 318, 134 N.W.2d 782, 783 (1965).

*seq.* These quick-take proceedings are not mutually exclusive. SDCL 31–19–40.

[¶ 11.] In non-quick-take condemnation cases, the municipality files a petition pursuant to the provisions of SDCL 21–35–2. No right to possession of the property is obtained by the condemning authority until it pays the full amount of condemnation judgment and costs. A City may dismiss the action after a just compensation verdict but *before* judgment is entered. *City of Aberdeen v. Lutgen,* 273 N.W.2d 183, 185 (S.D.1979).

[¶ 12.] "In quick-take cases, the condemning authority takes possession of the property prior to trial upon payment into court of its estimate of the value of the property taken. The condemnee may immediately withdraw the amount of the quick-take deposit and may also recover the amount of any deficiency where the value of the property is later determined at trial to be greater than the amount initially deposited by the condemnor." *King v. State Roads Comm'n of State Highway Admin.,* 298 Md. 80, 467 A.2d 1032, 1035 (1983). A municipality may utilize the quick-take provisions of SDCL 31–19–23 "any time before final judicial determination of the rights of the parties" even if the case is initially commenced as a non-quick-take action. This is in fact what City did and Johnsons agreed to.[5]

■ [¶ 13.] Both parties acquiesced to a quick-take proceeding pursuant to SDCL 31–19–23. The question now becomes whether § SDCL 31–19–33 applies to the case. SDCL 31–19–33 requires a condemnor to pay "interest at the Category A rate of interest as established in § 54–3–16 on the amount finally awarded as the value of the property as of the date of the court deposit." Pursuant to this statute, interest accumulates from that date to the date of payment, but interest is not allowed on money deposited into the court. However appellees concede in their brief that the date of the taking was November 3, 1995.

[¶ 14.] SDCL 31–19–33 clearly applies to municipalities utilizing the quick-take procedure. SDCL 31–19–40 provides: "Nothing in 31–19–23 to 31–19–39, inclusive, may be construed as to impair any provisions of chapter 21–35 or §§ 31–19–1 to 31–19–22, inclusive, or §§ 9–12–1 and 9–27–1, but the proceedings herein provided for are additional and cumulative thereto." Furthermore, SDCL 31–19–33 provides in pertinent part, "[a]fter the right to compensation has vested pursuant to 31–19–24, the condemnation action ... shall go to trial, and just compensation shall be ascertained ... and established by judgment. The judgment *shall* include interest ...." (emphasis added).

[¶ 15.] City and Johnsons implicitly agreed to the application of SDCL 31–19–24.[6] If SDCL 31–19–24 applies, then SDCL 31–19–33 applies as well. Interest should therefore be calculated at the 4.5 percent rate as set forth in SDCL 31–19–33, and 31–19–24.[7] We reverse the award

---

5. As applied to the facts of this case, the term quick-take is a misnomer. There was no "quick" in this "take." In *Johnson I, supra,* at footnote 1 we stated that this proceeding was not a quick-take. Procedurally, this action was a quick-take as City obtained exclusive possession prior to judgment.

6. It is apparent that both sides wish to select only those portions of SDCL ch 21–35 and/or ch 31–19 that advance their respective view of the case. One has only to apply the specific language of SDCL 31–19–28 to the conditions under which the two deposits were made and received to determine that the parties have by their own acts implicitly agreed to the entire statutory quick-take scheme found in SDCL 31–19–23 *et seq.*

7. The statutes conflict regarding the date from which to calculate interest. SDCL 31–19–33 provides interest shall be calculated from the date of deposit. SDCL 31–19–24 provides the right to just compensation vests

of prejudgment interest and remand to the trial court to calculate interest at the rate of 4.5 percent from November 3, 1995.

▪ [¶ 16.] This decision does not overrule settled condemnation law in South Dakota regarding the award of prejudgment interest.[8] As noted above, the legislature has prescribed various taking procedures. The quick-take procedure utilized herein is fundamentally different than a non-quick-take condemnation.

[¶ 17.] In *City of Aberdeen, supra*, City dismissed its suit after the verdict but before a judgment entered. The crucial fact was that City abandoned its action *before* any taking occurred, thus no just compensation or damages were due. In that instance it was obvious no pre-judgment interest can or should be awarded.

[¶ 18.] SDCL 21–35–22 contemplates the possibility that certain condemnation cases may be abandoned before judgment. Denial of prejudgment interest in such cases is not only fair, it makes sense. Technical title, especially when the proceeding may be dismissed, is not the func-

tional equivalent of interference with use or possession. South Dakota has previously held in accord with this view. *See Hurley*, 81 S.D. 318, 134 N.W.2d 782 (inverse condemnation action brought by original proceeding to this Court under the provisions of what is now SDCL ch 21–32).

[¶ 19.] In *Hurley*, we held the date of taking or damaging, was the date of *substantial interference* with the easement right.[9] In the present case, City clearly took exclusive possession, well beyond any technical vesting of title, prior to judgment. They commenced surveying and grading, destroying the home and outbuildings. City had no ability to abandon the proceeding as its actions were irrevocable and irretrievable. The statutory scheme requires interest at 4.5 percent. Interest should therefore be awarded from November 3, 1995 and calculated pursuant to SDCL 31–19–33.

## ATTORNEY FEES

▪ [¶ 20.] The *Johnson I* jury awarded $1.2 million. There, the trial court made a finding that the issues involved

---

8. *City of Aberdeen*, 273 N.W.2d 183, reaffirmed the principle enunciated in *Fairmont and V. Ry. Co. v. Bethke*, 37 S.D. 446, 159 N.W. 56 (1916) that "an eminent domain proceeding may be discontinued at anytime before the rights of the parties have become reciprocally vested. The condemnation proceedings merely fix a price or value, and a verdict does not vest title in the condemnor. Therefore, a condemnation proceeding may be dismissed by the condemnor after the verdict is rendered but prior to entry of judgment upon a verdict." *City of Aberdeen*, 273 N.W.2d at 184–85.

9. *Hurley v. State (Hurley II)*, 82 S.D. 156, 143 N.W.2d 722 (1966) subsequently affirmed an award of prejudgment interest at the then-existing general interest rate (6 percent) from the date the referee determined the plaintiff's property had been substantially interfered with, i.e., taken. *Id.* at 727.

as of the date that the (necessity) hearing is waived. Both parties have argued that interest, if due at all, accrues no earlier than November 3, 1995. The legislature has determined that interest accrues from the date of the court deposit, which is merely the technical taking contemplated by the deposit and occurs *before* an actual taking which is substantial interference with the property. The legislature likely did not envision a quick take procedure that takes nearly six years. Nevertheless, City could have chosen a non-quick-take condemnation; it did not. Just compensation is fair compensation which, depending on the circumstances of the particular action chosen, may or may not include interest. Just compensation is not formulaic, nor does the Fifth Amendment include any standard of fairness by which the measure of just compensation is to be determined. *United States v. Cors*, 337 U.S. 325, 332, 69 S.Ct. 1086, 1090, 93 L.Ed. 1392, 1398–99 (1949).

were not difficult or complex and awarded $130,000 in attorney fees. The *Johnson II* jury awarded $1.1 million. The trial court made a finding that the issues involved were not routine and took greater skill and expertise and awarded $175,000 of the $222,600 requested by Johnsons. There is no logical explanation; the issues and parties remain the same. Discovery was largely completed prior to *Johnson I*. Our opinion reversing that case provided parameters for all to follow.

[¶ 21.] In this case, Johnsons base their attorney's fee claim upon a contingent fee. " '[W]hile such contingent fee arrangements may be perfectly valid and proper as between an attorney and his client, it does not necessarily follow that such fee is a reasonable fee to be taxed against the party taking private property for a public use, as permitted under [SDCL 21–35–23].' " *City of Sioux Falls v. Kelley*, 513 N.W.2d 97, 111 (S.D.1994) (quoting *City of Bismarck v. Thom*, 261 N.W.2d 640, 643 (N.D.1977)).

[¶ 22.] The standards to decide reasonable attorney fees are well settled. The interplay between contingent fee agreement and the other applicable standards is set forth in *Kelley, supra*. After reviewing the record, we find ourselves unable to conduct a meaningful appellate review. The case is therefore remanded to the trial court to determine reasonable attorney fees.

## EXPERT FEES

[¶ 23.] Appraiser Davenport testified at the first trial but did not do so at the second trial. Johnsons' affidavit supporting Davenport's fees for *Johnson II* lists $2000 of his $4650 fee as attributable to "Trial." The request in *Johnson II* is identical to the request made in *Johnson I*. It is difficult to justify the $2000 as attributable to "Trial" in *Johnson II* when Davenport did not testify. The attorney's affidavit in support of the expert fees is sketchy and conclusory. Nevertheless, the trial court had an opportunity to hear first-hand Mr. Davenport's qualifications and assess his work product. We cannot say, therefore, the $2650 awarded for Mr. Davenport's initial report was an abuse of discretion.

[¶ 24.] Johnsons are entitled to expert fees. That Davenport did not testify *for Johnsons* is not dispositive. "It is settled law in this state that in condemnation actions an appraiser for the other party may be called upon to testify." *Rapid City v. Baron*, 88 S.D. 693, 227 N.W.2d 617, 619 (1975). SDCL 21–35–23 does not require an expert witness to testify.

[¶ 25.] Davenport's work product was utilized at both trials. Whether his services, attributed to "Trial," were necessarily incurred for bringing this matter to the second trial has not been adequately considered. On its face, $2000 of Davenport's fees are attributable to "Trial." If those fees were incurred during the first trial, then they are not reasonable fees to be paid as a result of *Johnson II* unless they should be awarded in the interest of justice. SDCL 15–17–56. The issue is remanded to the trial court to determine whether the $2000 assigned to "Trial" was necessarily incurred in the second Johnson trial or should be awarded in the interest of justice.

[¶ 26.] Johnsons raise an issue for the first time on appeal regarding an alternate method for calculating prejudgment interest. They failed to file a notice of review and such failure waives our consideration of these issues. *Zoss v. United Building Centers, Inc.*, 1997 SD 93, ¶ 20, 566 N.W.2d 840, 846.

## APPELLATE ATTORNEY FEES

[¶ 27.] Johnsons filed a separate motion for $28,656 plus tax for appellate

attorney fees. Appellate attorney fees may be granted "in actions where such fees *may* be allowable[.]" SDCL 15–26A–87.3. Johnson claims appellate attorney fees are allowable pursuant to SDCL 21–35–23. This statute clearly contemplates that attorney fees are awarded at the trial level for trial. The motion for appellate attorney fees is denied.

[¶ 28.] MILLER, Chief Justice, and AMUNDSON, KONENKAMP and GILBERTSON, Justices, concur.

[¶ 29.] ECKRICH, Circuit Judge, for SABERS, Justice, disqualified.