2002 SD 104

**Loren BECK and John and Jane Doe 1–50, Plaintiffs and Appellees,**

v.

**CITY OF RAPID CITY, Defendant and Appellant.**

**No. 21960.**

Supreme Court of South Dakota.

Argued April 24, 2002.

Decided Aug. 14, 2002.

Courtney R. Clayborne of Johnson, Eisland, Huffman & Clayborne, Rapid City, for plaintiff and appellees.

Adam Altman, Assistant City Attorney, Rapid City, for defendant and appellant.

AMUNDSON, Justice.

[¶ 1.] Loren Beck and John and Jane Doe 1–50 (Beck), Plaintiff/Appellee, moved the circuit court for class certification in a class action suit brought against the City of Rapid City (City), Defendant/Appellant. The circuit court granted certification of the class. City appeals. We remand for reexamination by the circuit court.

## FACTS

[¶ 2.] A lawsuit by Beck against City stemmed from our decision in *City of Rapid City v. Anderson*, 2000 SD 77, 612 N.W.2d 289. In that case we determined

that the annexation of property encompassing "the Rapid City Airport [Airport] was invalid because of the lack of contiguity between Rapid City and the annexed airport." *Id.* at ¶ 15. Prior to June 14, 2000, City had been collecting sales tax from the businesses operating at the Airport. Beck filed a complaint on July 18, 2000, alleging he had wrongfully been paying sales tax during the time of the subsequently determined wrongful annexation. Beck also alleged that he represented the class of consumers who had been wronged by the tax, and he, on behalf of himself and those similarly situated, sought a refund of all sales tax proceeds paid to City, as well as attorney's fees, interest and costs.

[¶ 3.] About six months after Beck filed suit, City set up a procedure whereby those who paid city tax during the time of annexation of the subject property could receive a refund. City also passed Ordinance 3640, which appropriated $250,000 to refund money to those who provided proper documentation that they paid sales tax within the annexed property.[1] City then posted notice of the available refunds at the Airport and retail establishments in the Airport.

[¶ 4.] On March 26, 2001, Beck filed a motion to certify the class. The circuit court granted the motion, and appointed Beck to serve as the class representative for those who paid retail sales or service tax to City on the wrongfully annexed property that encompassed the Airport. City appeals, raising the following issue:

## Whether the trial court erred by certifying the class.

### STANDARD OF REVIEW

[¶ 5.] We have previously held that the standard of review for class action certification is the abuse of discretion standard. *Swanson v. Sioux Valley Empire Elec. Ass'n*, 535 N.W.2d 755, 759 (S.D.1995) (citing *Trapp v. Madera Pacific, Inc.*, 390 N.W.2d 558, 562 (S.D.1986)).

### DECISION

[¶ 6.] The memorandum decision issued by the trial court granted class certification, stating that the requirements for certification are present and that alternative methods of recovery are not superior to the class action lawsuit. City argues the administrative procedure set up, which would permit those entitled to obtain refunds to apply to City for such refunds, is superior to the class action suit, thereby denigrating the need for a class action suit. It argues that under its method, it would be easier for claimants to prove their right to a refund, and that the less formal method of proof is superior to the class action.[2] City further claims the administrative remedy provided by City would provide for instant payment, whereas the class action claimants would have to await the close of litigation and exhaustion of appeals. Finally, City contends the class action would require trial on the merits, where submitting a claim directly to City would ensure, with certainty, the claimant would recover.

[¶ 7.] Our Legislature has enumerated several pre-requisites for class actions.

---

1. City states the $250,000 is not an approximation of the amount of tax collected during annexation, and that that amount has yet to be accurately calculated. It further states that measures have been taken to ensure supplemental funds will be appropriated if necessary.

2. Under City's refund guidelines, it would accept dated receipts showing the location of the purchase or other verifiable evidence showing purchase of taxable goods and/or services. The class action, City alleges, would require claimants to have all receipts showing the amount of tax paid, or be denied a refund.

*See* SDCL 15–6–23(a);[3] SDCL 15–6–23(b).[4] Of these statutory requirements, City only disputes the circuit court's finding that the class action is superior to City's administrative remedy pursuant to SDCL 15–6–23(a)(3). We have previously stated that "[i]n deciding whether to allow a class action, a primary determination to be made is whether the class action is superior to, and not just as good as, other available methods for handling the controversy, and such a determination lies in an area where the trial court's discretion is paramount." *Trapp*, 390 N.W.2d at 560. We have further held that the party requesting certification of the class has the burden of proving that the statutory requirements for a class action have been met. *See id.* We have not, however, had the opportunity to discuss or expound on the requirement that the class action class be "superior to other available methods for the fair and efficient adjudication of the controversy." SDCL 15–6 –23(b)(3).

■ [¶ 8.] In considering the superiority issue, we consider the interests of the class members, litigation already commenced by class members, whether it is desirable to litigate in one forum and management involved with the class. *Id.* Also, other courts in analyzing this issue consider the amount of potential damages to individual class members. The Minnesota District Court stated the following:

Unfortunately, this [c]ourt's experience with class actions involving class members whose financial circumstances make it difficult to ascertain their identities or their present whereabouts convinces this [c]ourt that a class action is not a superi-

3. SDCL 15–6–23(a) provides:
One or more members of a class may sue or be sued as representative parties on behalf of all only if
(1) the class is so numerous that joinder of all members is impracticable,
(2) there are questions of law or fact common to the class,
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class,
(4) the representative parties will fairly and adequately protect the interest of the class, and
(5) the suit is not against this state for recovery of a tax imposed by chapter 10–39, 10–39A, 10–40, 10–41, 10–43, 10–44, 10–45, 10–46, 10–46A, 10–46B, or 10–52.

4. In addition to meeting the pre-requisites of SDCL 15–6–23(a), the following conditions must be met pursuant to SDCL 15–6–23(b):
(1) the prosecution of separate actions by or against an individual member of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or,
(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the inter-

est of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interest; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate permanent injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any question affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
(D) the difficulties likely to be encountered in the management of a class action.

or vehicle to provide an appropriate remedy in this situation. The [c]ourt anticipates tremendous difficulty and only limited success in notifying perspective class members of the class action and their rights to opt out and recover a potentially greater damage award under the [Fair Debt Collection Practices Act] if they proceed individually. The Court also anticipates difficulty in ensuring that class members who do not opt out actually receive their damage awards. It is the [c]ourt[']s experience that the benefits of .such a class action would inure, if at all, to class counsel and the designated recipients of class finds that the Court is unable to distribute to class members. Thus, the Court finds that presentation of individualized claims in separate proceedings would be superior to the vehicle of a class action.

*Sonmore v. CheckRite Recovery Serv., Inc.*, 206 F.R.D. 257, 266 (D.Minn.2001) (denying motion for class certification).

[¶ 9.] A litany of cases from California courts have upheld and expanded upon the same proposition presented in *Sonmore*. In *Blue Chip Stamps v. Superior Court*, the California Superior Court stated the following:

> When potential recovery to the individual is small and when substantial time and expense would be consumed in distribution, the purported class member is unlikely to receive any appreciable benefit. The damage action being unmanageable and without substantial benefit to class members it must then be dismissed. And, when the individual's interests are no longer served by group action, the principal—if not the sole—beneficiary then becomes the class action attorney. To allow this is "to sacrifice the goal for the going," burdening if

not abusing our crowded courts with actions lacking proper purpose.

18 Cal.3d 381, 134 Cal.Rptr. 393, 556 P.2d 755, 758 (1976) (internal citations omitted). The *Blue Chip Stamps* court directed the lower court to vacate the order certifying the class and to dismiss the class action. *Id.* at 756. In *Caro v. Procter & Gamble Co.*, the court cited *Blue Chip Stamps* approvingly and found that where class members would receive miniscule amounts of damages and the court's burden was not eased by the class action, no certification would be granted. 18 Cal.App.4th 644, 22 Cal.Rptr.2d 419, 426–27 (1993) (addressing denial of class certification in suit for false representation of the characteristics of orange juice products). *Caro* affirmed the trial court's denial of class certification because of the lack of substantial benefit to the litigants involved. *Id.* at 424–25.

[¶ 10.] Next, in *Linder v. Thrifty Oil Company*, the California Supreme Court analyzed a trial court's denial of class certification and expanded on the significance placed on small damage amounts by stating that the trial court has an obligation to deter and redress wrongdoing, in spite of small damage claims. 23 Cal.4th 429, 97 Cal.Rptr.2d 179, 2 P.3d 27, 38 (2000). The *Linder* court explained that the "problems which arise in the management of a class action involving numerous small claims do not justify a judicial policy that would permit the defendant to retain the benefits of its wrongful conduct and continue that conduct with impunity." *Id. Linder* further explained:

> While the potential amount of each individual recovery is a significant factor in weighing the benefits of a class action, it is not the only factor requiring consideration.... Moreover, the Court of Appeals assumed that substantial time and expense would be required to provide legally adequate notice to class mem-

bers, even though the trial court had yet to take evidence and rule on the matter. Accordingly, without intimating any view on the matter, we find it appropriate to leave this issue to the trial court for reexamination. *Id.* at 39. Thus, the *Linder* court remanded so that the trial court could determine whether the class certification was appropriate when placing the proper emphasis on benefits other than financial recovery. *Id.* at 40.

[¶ 11.] These cases make it clear that small damage amounts are considered, but are not the sole determining factor when looking at the superiority of a class action in comparison to other methods of resolution. Courts also consider factors like judicial efficiency and manageability of the group involved. *Williamson v. Sanofi Winthrop Pharm., Inc.*, 347 Ark. 89, 60 S.W.3d 428, 435 (2001) (affirming the denial of class certification and stating the "superiority requirement is satisfied if class certification is the more 'efficient' way of handling the case, and it is fair to both sides"). Further yet, the Supreme Court of Minnesota has said that "where potential recovery is too small to justify individual litigation, a class action is proper" as it is "unreasonable to assume" that each individual would litigate on their own. *Forcier v. State Farm Mut. Auto. Ins. Co.*, 310 N.W.2d 124, 130 (Minn.1981) (analyzing the certification of a class and remanding so the trial court could reconsider whether a class action was the "superior" method of recovery).

[¶ 12.] Great discretion is usually given to the trial judge in certification cases, and certification itself is favored by courts in questionable cases.

The weight of authority suggests that "even in doubtful cases the maintenance of class action is favored," because decertification is always possible, and that wherever a question exists, "the court should give the benefit of the doubt to approving the class. . . . [I]f [the court] does have doubts . . . the law requires that they be resolved in favor of certification."

*Coleman v. Cannon Oil Co.*, 141 F.R.D. 516, 530 (M.D.Ala.1992) (internal citations omitted) (upholding class certification of class in price fixing conspiracy suit against gasoline sellers). Keeping this discretion in mind, we also note the unique factual scenario faced in this case. In *Blue Chip Stamps*, 134 Cal.Rptr. 393, 556 P.2d at 759–60, the concurrence by Justice Tobriner states that "given the unusual facts of this case, neither proof of claim procedures nor fluid recovery mechanisms could function as effective means of affording class members meaningful compensation for the alleged overpayments of the sales tax." Similarly, this may be the same result in the attempted class action suit by Beck against City. Also, in this case there is no recorded evidence that City intentionally deceived those injured by the improper annexation of the land at issue. This in turn eliminates the potential of punishing a wrongdoer, which has been the objective in some class action suits. *Linder*, 97 Cal. Rptr.2d 179, 2 P.3d at 39.

[¶ 13.] Furthermore, there is evidence that tens of thousands of potential class members exist, but there is no evidence in the record before us of how counsel for the plaintiffs plans to locate class members and efficiently manage the class he plans to represent. We also note that some of the information presented at oral argument by Beck's counsel, such as the ability to obtain specific information about class members from car rental businesses who had operated out of the Airport during the time of annexation, is not part of the record before us. Thus, we decline to utilize that information in our decision in this

case. On the limited record presented we cannot analyze whether there are class members risking more than nominal damages; whether the class members will be effectively contacted; whether judicial efficiency is bettered by the use of a class action; or whether any other matters pertinent to finding superiority as listed in SDCL 15–6–23(b)(3) exist.

[¶ 14.] Further development of the record must be had before we can effectively determine whether the class action is superior to City's administrative remedy. *See City of Sioux Falls v. Johnson*, 2001 SD 108, ¶ 22, 632 N.W.2d 849, 855 (stating that because the Court was unable to do a "meaningful appellate review" the case is remanded to the trial court for a determination on the issue); *Jensen v. Weyrens*, 474 N.W.2d 261, 266 (S.D.1991) (stating " 'the appellate court may remand for . . . further findings' .if necessary to a meaningful review of the decision") (citation omitted). We cannot place a stamp of approval on the certification of the class because the record is inadequate for a meaningful appellate review. *See Warner v. Waste Mgmt., Inc.*, 36 Ohio St.3d 91, 521 N.E.2d 1091, 1096 (1988) (remanding decision to certify class because the record was "devoid of any evidence indicating the representatives are members of the class seeking injunctive relief"). We remand for further proceedings at the trial court level so that the record can fully be developed regarding this issue. Therefore, it remains to be seen whether the trial court's certification should be decertified, modified or remain unchanged.[5] On remand, when determining whether the class should remain certified, the trial court should consider the class characteristics, including the amount of money involved.

[¶ 15.] Based on our decision on this issue, we find it unnecessary to address any of the sub-issues presented.

[¶ 16.] KONENKAMP, Justice, concurs.

---

5. We note that during proceedings on remand, the trial court will have broad discretion in class certification, in part, because the class "is always subject to modification should new developments . . . require." *Boudreaux v. State Dep't of Transp. and Dev.*, 690 So.2d 114, 122 (La.Ct.App.1997).

A court may modify a proposed definition of the class where the court believes that the original definition is inadequate. To this end, the trial court may order the plaintiff class representatives in a class action to amend their complaint to define with particularity the class of individuals whom the plaintiffs seek to represent, where the original complaint fails to sufficiently or properly define the class sought to be represented. Leave to amend the complaint in a class action to redefine the class is to be freely given, except where prejudice may result to either the defendants or to those persons dropped from the class. Where the definition of the class is overbroad, amorphous, or otherwise inadequately defined, the proposed class representatives will be given leave to amend the pleadings so as to allow the representative to adequately define a clearly ascertainable class, which representatives are qualified to represent. . . . Leave to amend to redefine the class may also be justified by factors bearing on the manageability of the class, including problems related to the identity of the members and class notice. The class definition may be modified and subclasses defined as a result of discovery or even developments at trial.

32B Am.Jur.2d Federal Courts § 1837 (1996)· Additionally, the trial court may decertify the class if the evidence provides for decertification. *Duhe v. Texaco, Inc.*, 779 So.2d 1070, 1086 (La.Ct.App.2001) (holding class certification appropriate and stating that anytime "before a decision on the merits of the common issues, the court may alter, amend, or recall its initial ruling on certification"). *See also* 59 Am.Jur.2d Parties § 106 (stating that "[a]s evidentiary facts are developed, the trial court may decertify, subclassify or modify a previously certified class action").

[¶ 17.] SABERS, Justice and GORS, Circuit Judge, concur in result.

[¶ 18.] GILBERTSON, Chief Justice, dissents.

[¶ 19.] GORS, Circuit Judge, sitting for ZINTER, Justice, disqualified.

SABERS, Justice (concurring in result).

[¶ 20.] I join that part of Justice Amundson's writing which reverses and remands the certification of the class action in full. Therefore, I would reverse the certification of the class action in full and limit it to identifiable persons and amounts.[6]

[¶ 21.] The claim procedure established by the City appears to be the best and fairest as to non-identifiable persons and amounts, and those who prefer to opt out of the limited class action provided for above.

[¶ 22.] The limited class action and the City procedure combined will be the most effective and economical method and provide an option to those who wish to obtain refunds and avoid expenses for attorneys. The two methods combined should guarantee the most refunds at less cost and expense to all concerned. *See, e.g., Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (holding that a limited fund set aside by the defendants for payment of injured persons, in combination with a limited class action suit, was the appropriate remedy for plaintiffs).

*See also Smith v. United HealthCare Svcs., Inc.*, 2002 WL 192565 (D.Minn.2002) (holding that "the relatively small amounts at stake for each member render the class action a superior method for fair and efficient adjudication of this dispute"); *Zeigler v. Gibralter Life Ins. Co. of Am.*, 43 F.R.D. 169, 173 (D.S.D.1967) (stating that class action is the preferred method when it is "superior to other available methods for the fair and efficient adjudication of the controversy") (citation omitted); *Trapp*, 390 N.W.2d at 561 (same).

GILBERTSON, Chief Justice (dissenting).

[¶ 23.] Before this Court addresses issues such as the optimum course of action for refund mechanisms, it must first determine if there is jurisdiction for the trial court to implement a particular proposal such as a class action.

[¶ 24.] City argues that because it is a government entity, sovereign immunity precludes certification of a class against it. Article III § 27 of the South Dakota Constitution provides: "The Legislature shall direct by law and in what manner and in what court suit may be brought against the state." In *Lick v. Dahl*, this Court considered whether a class action could be maintained by a taxpayer against a county for the recovery of "refunds attributable to an alleged illegal tax." 285 N.W.2d 594, 599, 10 A.L.R.4th 645, 652 (S.D.1979).[7]

---

**6.** The record reflects that many persons and amounts are identifiable through the business records of the retailers at the Airport.

**7.** Likewise, several other courts have held that statutory procedures for obtaining refunds of unlawfully exacted taxes, such as those implemented by City, are exclusive remedies. *See Propriety of Class Action in State Courts to Recover Taxes*, 10 A.L.R.4th 655, 663 (1981) (citing *Lick*, 285 N.W.2d 594, *Ellsworth Freight Lines, Inc. v. State Tax Com.*, 651 S.W.2d 130 (Mo.1983); *Lilian v. Commonwealth*, 467 Pa. 15, 354 A.2d 250 (1976); *Charles v. Spradling*, 524 S.W.2d 820 (Mo. 1975); *Henderson v. Carter*, 229 Ga. 876, 195 S.E.2d 4 (1972); *Hooks v. Comptroller of Treasury*, 265 Md. 380, 289 A.2d 332 (1972); *Hansen v. Lincoln County*, 188 Neb. 461, 197 N.W.2d 651 (1972)). Those courts reasoned that states had waived their sovereign immunity *only* to the extent that persons seeking refunds complied with the statutory proce-

This Court, after reviewing case law on the issue, concluded, "since class actions are not expressly provided for in either [tax refund] statute, SDCL 15–6–23 cannot be employed in suits for tax refunds." *Id.* at 600. Cf. *Van Emmerik v. State,* 298 N.W.2d 804 (S.D.1980) (allowing action by utility retailers against state for tax refund based on authority in SDCL 10–45–53).

[¶ 25.] The fundamental reason is two-fold. Most obviously, SDCL 15–6–23 contains no express language abrogating sovereign immunity. *Id.* Nor is any identified by this Court. Secondly, any such abrogation language, if existent, would be void, as SDCL 15–6–23 is not a statute, but only a procedural rule adopted by this Court.[8] Article III § 23 does not authorize abrogation of sovereign immunity by rule of this Court.

[¶ 26.] Thus, I would reverse the trial court with instructions to deny class certification. For the above reasons I respectfully dissent.

---

dures, which *did not* include class actions. *Id.*

8. SD RC, Rule 23 was adopted by Supreme Court Order #2 on March 31, 1969, and became effective July 1, 1969. The only subsequent legislative amendments to this Court rule occurred in 1982 and 1985 when the Legislature made it even more explicit that class actions could not be maintained against the state, itself, for recovery of certain taxes.

*See* 1982 Sudses. ch. 99 § 9; 1985 Sudses. ch. 15 § 31. However, these amendments are consistent with *Lick* and in no way lessened *Lick's* rationale by enacting language that would result in an abrogation of sovereign immunity against a municipality. Article V § 12 of the South Dakota Constitution authorizes the Legislature to amend or change the rules of this Court.